SOUTH UNION TOWNSHIP, North Union Township, City of Uniontown, as political subdivisions; and Robert Schiffbauer, Thomas Frankhouser, Rock Coville, Thomas Kumor, Robert Tupta, John Mateosky, James Sileo, Bob Cerjanec, and Blair R. Jones, Sr., in their individual capacities as taxpayers, Petitioners

v.

COMMONWEALTH of Pennsylvania, Department of Environmental Protection, and Kathleen A. McGinty, Secretary, Respondents.

Commonwealth Court of Pennsylvania.

Argued Sept. 10, 2003.

Decided Dec. 24, 2003.

James T. Davis, Uniontown, for petitioners.

Daniel J. Doyle, Harrisburg, for respondents.

Wilson M. Brown, III, Philadelphia, for intervenor, PA Waste Industries Assoc.

Andrew J. Giorgione, Harrisburg, for intervenor, Township of Derry.

BEFORE: COLINS, President Judge, and SMITH–RIBNER, Judge, PELLEGRINI, Judge, FRIEDMAN, Judge, LEADBETTER, Judge, COHN, Judge, and LEAVITT, Judge.

OPINION BY Judge LEAVITT.

Before the Court are the preliminary objections of the Commonwealth of Pennsylvania, Department of Environmental Protection and Secretary of Environmental Protection, Kathleen A. McGinty (Commonwealth) and Intervenor, Pennsylvania Waste Industry Association (Association), to the Amended Petition for Review[1] of South Union Township, North Union Township, the City of Uniontown and various residents of those municipalities (collectively Petitioners).[2]

1. On September 20, 2002, the Petitioners filed a Petition for Review addressed to this Court challenging the constitutionality of certain disposal fee requirements. The Commonwealth filed preliminary objections in the nature of the demurrer, and Petitioners thereafter filed a motion for preliminary injunction. The parties resolved the latter issue by entering into a stipulation, which, *inter alia*, allowed Petitioners to file an Amended Petition for Review in the Nature of a Complaint in Equity and Suit for Declaratory Judgment and Injunctive Relief (Amended Petition). The Commonwealth Respondents and Association then filed preliminary objections in the nature of a demurrer.

2. The Township of Derry was granted intervention during the proceedings and in this

Petitioners seek to have certain provisions of the Environmental Resources Code, 27 Pa.C.S. §§ 6201–6306, declared unconstitutional and their enforcement enjoined. Specifically, they claim that the disposal fees established in Chapter 63 of the Code, 27 Pa.C.S. §§ 6301–6306, violate due process, impair their contract rights, and violate the constitutional requirement of uniform taxation. Further, they claim the provisions by which these unconstitutional fees were established are so vague that Chapter 63 must be found unconstitutional. The Commonwealth and the Association[3] seek to have the Amended Petition dismissed for failure to state a cause of action.

## BACKGROUND

Chapter 62, the Waste Transportation Safety Act (Chapter 62), and Chapter 63, which establishes disposal fees for municipal waste landfills (Chapter 63), were added to Title 27 of the Consolidated Statutes by the Act of June 29, 2002, P.L. 596, 27 Pa.C.S. §§ 6201–6209, 6301–6306. Chapter 62 establishes a program for the safe transportation of municipal or residual waste. It requires municipalities to comply and prohibits them from accepting waste from an unauthorized transporter. 27 Pa.C.S. § 6206(a). Chapter 63 establishes a disposal fee of $4.00 per ton for all solid waste disposed of at a municipal waste landfill.[4] The owner or operator of the municipal waste landfill must collect and remit this fee; however, the operator may pass this obligation onto any person who delivered the waste to the municipal waste landfill as a surcharge.[5] The transporter of the waste may also pass this fee on to the generator of the waste as a surcharge.[6]

Opinion is considered as one of the collective Petitioners unless otherwise noted.

3. The Association intervened for the purpose of seeking a declaration that the "pass through" provisions of Chapter 63 are valid and enforceable.

4. Chapter 63 provides in relevant part:
 (a) Imposition. Except as otherwise provided in subsection (b), *each operator of a municipal waste landfill shall pay*, in the same manner prescribed in Chapter 7 of the act of July 27, 1988 (P.L. 566, No. 101), known as the Municipal Waste Planning, Recycling and Waste Reduction Act, *a disposal fee of $4 per ton for all solid waste disposed of at the municipal waste landfill.* The fee established in this section shall apply to process residue and nonprocessible waste from a resource recovery facility that is disposed of at the municipal waste landfill and is in addition to the fee established in section 701 of the Municipal Waste Planning, Recycling and Waste Reduction Act.
 27 Pa.C.S. 6301(a) (emphasis added).

5. Chapter 63 further provides in relevant part:
 (a) Owners and operators. The owner or operator of a municipal waste landfill

which collects and remits the fee established pursuant to section 6301 (relating to disposal fee for municipal waste landfills) may pass through and collect the fee from any person who delivered the waste to the municipal waste landfill as a surcharge in accordance with section 705 of the Municipal Waste Planning, Recycling and Waste Reduction Act on any fee schedule established pursuant to law, ordinance, resolution or contract for solid waste disposal operations at the municipal waste landfill.
27 Pa.C.S. 6303(a).

6. Chapter 63 provides in relevant part:

 (b) Transporters and transfer stations. The transporter or transfer station that is charged a fee or surcharge pursuant to section 6302 (relating to deposit of disposal fee) or subsection (a) may pass through and obtain the fee from the generator of such waste as a surcharge in accordance with section 705 of the Municipal Waste Planning, Recycling and Waste Reduction Act on any fee schedule established pursuant to law, ordinance, resolution or contract for solid waste collection, transfer, transport and delivery.
27 Pa.C.S. § 6303(b).

On September 2, 1999, South Union Township and North Union Township[7] (Townships) jointly entered into a five-year contract with CBF, Inc. for the collection and transportation of all solid waste generated by residents of the two Townships. The Townships' contract requires CBF, Inc. to bill residents for their waste disposal. On April 19, 2002, the City of Uniontown (City) entered into a similar five-year contract with CBF, Inc. The City's contract differs from that of the Townships' in that the City is "responsible for payment of all … state … fees and other charges assessed as a result of the disposal of Customer's Waste at the Landfill." Amended Petition, Exhibit B at ¶ 14.

On July 23, 2002, the Townships and the City (Municipal Petitioners) received letters from CBF, Inc. that as a result of the enactment of Chapters 62 and 63, it would be notifying residents of an increase in their monthly sewage bills. Shortly thereafter, Robert Schiffbauer, Thomas Frankhouser, Rock Coville, Thomas Kumor, Robert Tupta, John Mateosky, James Sileo, Bob Cerjanec and Blair R. Jones, Jr. (Individual Petitioners), who are residents in the Townships and City, received letters at their respective residences notifying them that their monthly sewage bills would increase by an average of $0.50 per month. The Municipal and Individual Petitioners then filed suit.

Their Amended Petition charges that these disposal fees will cause municipali-ties and landowners in Pennsylvania to "incur monetary losses" each year in excess of "millions of dollars." Amended Petition at ¶ 30. Petitioners contend the disposal fee deprives them of property without due process in violation of the Fourteenth Amendment to the U.S. Constitution and Article I of the Pennsylvania Constitution. They assert that Chapter 63 has nullified existing and lawful disposal fees without a hearing at which the new fee could be challenged by Petitioners. Because the new fee alters the contractual relationships between the Municipal Intervenors and CBF, Inc. and requires Individual Petitioners to pay fees in excess of those contemplated by those contracts, the disposal fee impairs those contracts in violation of Article I, § 10 of the U.S. Constitution and Article I, § 17 of the Pennsylvania Constitution. Petitioners also claim, on the basis of Article IX, §§ 1 and 2 of the Pennsylvania Constitution and the Equal Protection Clause in the U.S. Constitution, that the disposal fee established in Chapter 63 is a special tax that violates the proscription against non-uniform taxation. Finally, Petitioners assert that the terms of Chapter 63 are so vague that the entire chapter must be voided.

▬ The Commonwealth seeks dismissal of the Amended Petition, contending that Petitioners have not pled facts sufficient to state a cause of action under any of the constitutional theories they advance.[8] We consider each theory ad-

---

7. The Intervening Petitioner, Township of Derry, contracted with Waste Management of Pennsylvania, Inc. for the collection, transportation, disposal and recycling of waste for three years. Township of Derry contends that because it contracted for these services at a fixed price, the disposal fee cannot be passed onto its residents. However, Waste Management of Pennsylvania, Inc. began surcharging Township residents on October 1, 2002. The Township has alleged no harm to itself but only to its residents.

8. In ruling upon a preliminary objection in the nature of a demurrer, we must accept as true all well-pleaded allegations of material fact and all inferences reasonably deductible therefrom. *Myers v. Ridge*, 712 A.2d 791, 794 (Pa.Cmwlth.1998). We need not accept as true conclusions of law, unwarranted inferences, argumentative allegations, or expressions of opinion. *Id.* The test is whether it is

vanced by Petitioners in support of their claim that Chapter 63 is unconstitutional. In doing so, we are mindful that a statute is presumed to be constitutional and will not be declared unconstitutional unless it clearly, palpably and plainly violates the Constitution. *Commonwealth v. Cotto*, 562 Pa. 32–35, 753 A.2d 217, 219 (2000). In challenging the constitutionality of a statute, Petitioners have a heavy burden of persuasion. *Consumer Party of Pennsylvania v. Commonwealth*, 510 Pa. 158, 175, 507 A.2d 323, 332 (1986).

## DUE PROCESS

▇ The Petitioners contend that Chapter 63 violates the due process guarantees of the United States and Pennsylvania Constitutions.[9] Specifically, they contend that the "surcharge of these fees to the generators of the solid waste applies without any hearing or opportunity to be heard." Amended Petition at ¶ 25. The Commonwealth contends, however, that

---

clear from all of the facts pleaded that the pleader will be unable to prove facts legally sufficient to establish his or her right to relief. *Id.*

9. The due process guarantee in the Pennsylvania Constitution emanates from Article I, Section 1, which provides in part:

> All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness.

PA CONST. art. I, § 1. The Pennsylvania Supreme Court has held that the same analysis governs the state and federal due process provision, since the requirements of the state constitutional guarantee are indistinguishable from those of the Fourteenth Amendment. *See Pennsylvania Game Commission v. Marich*, 542 Pa. 226, 229, 666 A.2d 253, 255 n. 6 (1995).

10. The only entities with responsibility to collect and remit the $4 per ton disposal fee are

---

the facts pled are inadequate to state a cause of action.[10]

▇ Procedural due process is not inflexible. It calls for protections tailored to the particulars of the situation, demanding a balancing of competing interests. *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). A violation of due process requires consideration of three factors: (1) the private interest that will be. affected by the *official action;* (2) the risk of an improper deprivation of such interest under the procedures followed; and (3) the fiscal and administrative burdens that additional or substitute procedural requirement might entail. *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) (emphasis added).

▇ Here, Petitioners have failed to plead facts that would relate their challenge to an "official· action." Certainly, CBF, Inc. is not a state actor. Further, the protections of procedural due process

---

the operators of municipal waste landfills. The Amended Petition does not allege that any Petitioner is an operator of a municipal waste landfill. Because 27 Pa.C.S. § 6301(a) does not in any way apply to Petitioners, it cannot be said to violate their constitutional rights.

Section 6303(a) applies to persons who deliver the waste to the landfill. The City is the only Petitioner that delivers waste to a landfill. Accordingly, Section 6303(a) does not apply to the remaining Petitioners and cannot violate their constitutional rights. As a transporter, however, the City "may pass through and obtain the fee from the generator of such waste as a surcharge." 27 Pa.C.S. § 6303(b).

In the end, the only Petitioners actually affected by the disposal fee are the Individual Petitioners. In this opinion, unless otherwise noted, we do not attempt to parse each constitutional claim by category of Petitioner. Rather, we consider the Commonwealth's preliminary objections as to all Petitioners.

do not extend to legislative actions. *Bi–Metallic Investment Co. v. State Board of Equalization,* 239 U.S. 441, 445, 36 S.Ct. 141, 60 L.Ed. 372 (1915). In *Bi–Metallic,* the Court rejected a landowner's contention that he had a due process right to a hearing before the State Board of Equalization voted on an order increasing the valuation of all taxable property in Denver, Colorado by forty percent. The Court stated:

> Where a rule of conduct applies to more than a few people, it is impracticable that everyone should have a direct voice in its adoption. The Constitution does not require all public acts to be done in town meeting or an assembly of the whole. General statutes within the state power are passed that affect the person or property of individuals, sometimes to the point of ruin, without giving them a chance to be heard. Their rights are protected in the only way that they can be in a complex society, by their power, immediate or remote, over those who make the rule.

*Id.* As recently as 1998, the Pennsylvania Supreme Court has reiterated this principle. *See Small v. Horn,* 554 Pa. 600, 613, 722 A.2d 664, 671 (1998) ("It is well settled that procedural due process concerns are implicated only by adjudications, not by state actions that are legislative in character.").

Because Petitioners challenge legislative, rather than official action, their procedural due process claim fails. We sustain the Commonwealth's preliminary objection to this claim.

## IMPAIRMENT OF CONTRACT

Petitioners' next theory is that Chapter 63 impairs their contract rights because it "impose [sic] new fees that alter existing contractual obligations of the Petitioners," and "compels the Petitioners to pay new fees for the disposal of solid waste not contemplated by existing contractual obligations." Amended Petition at ¶ 33. The Commonwealth asserts that the pass-through opportunity in Section 6303 obviates any contract "problem." However, even if the disposal fee affected one of the Petitioners' contracts, the Commonwealth argues that the impairment is insignificant in comparison to the public good accomplished by the legislation. Further, the disposal fee is a tax and, as such, cannot be challenged on grounds of contract protection. In response, Petitioners assert that we must overrule this preliminary objection under the doctrine of *stare decisis.*

Petitioners' *stare decisis* argument is based upon our holding in *Northern Tier Solid Waste Authority v. Commonwealth of Pennsylvania,* 825 A.2d 793 (Pa. Cmwlth.2003). In that case, we overruled the Commonwealth's preliminary objection based on the claim that the opportunity to pass-through the $4.00 per ton disposal fee to customers nullified an impairment of contract claim.[11] However, in *Northern Tier,* the petitioner, a municipal authority, averred that it could not pass through the disposal fee. We determined not to dismiss the petition for review unless and until certain factual issues relating to the contract claim could be resolved.

■ The facts here are distinguishable from those in *Northern Tier.* The *Northern Tier* petitioner was directly responsible for remitting fees and taxes to the Commonwealth. Here, the Municipal Pe-

---

11. On October 7, 2003, this Court denied an application for summary relief filed by Northern Tier. *Northern Tier Solid Waste Authority v. Department of Revenue,* 825 A.2d 793 (Pa. Cmwlth.2003). The case is still in progress.

titioners [12] have not averred a direct responsibility for collecting and remitting any tax or fee or an inability to pass the disposal fee onto the generators of the waste. To the contrary, the Amended Petition avers that the surcharge has been passed on to residents in the Townships and City. Thus, the Municipal Petitioners have neither averred nor identified any harm to themselves. Accordingly, *Northern Tier* is not controlling here.

▮▮▮▮▮▮ We turn, then, to the merits of Petitioners impairment of contract [13] claim, which requires Petitioners to demonstrate that a change in state law has operated as a substantial impairment of a contractual relationship. *General Motors Corp. v. Romein*, 503 U.S. 181, 186, 112 S.Ct. 1105, 117 L.Ed.2d 328 (1992).[14] Contract clause analysis involves three components: whether there is a contractual relationship, whether a change in law impairs that contractual relationship, and whether the impairment is substantial. *Id.* When new legislation substantially impairs contractual relations, the State, in justification, must have a significant and legitimate public purpose behind the [law], such as the rem-

---

**12.** With regard to the City, the issue is different. The City anticipated this disposal fee in its contract and expressly agreed to "be responsible for payment of all ... state ... fees and other charges assessed as a result of the disposal of Customer's Waste at the Landfill." Amended Petition, Exhibit B at ¶ 14. There can be no credible claim of impairment of contract where the parties anticipated such an event and addressed it in the contract. *Energy Reserves Group, Inc. v. Kansas Power and Light Company*, 459 U.S. 400, 411, 103 S.Ct. 697, 74 L.Ed.2d 569 (1983). In any case, 27 Pa.C.S. § 6303(b) allows the City as a transporter to "pass through and obtain the fee from the generator of such waste...."

**13.** Although the Contract Clause appears to proscribe any impairment, the prohibition is not an absolute one and is not to be read with literal exactness like a mathematical formula. *United States Trust Company of New York v. New Jersey*, 431 U.S. 1, 22, 97 S.Ct. 1505, 52 L.Ed.2d 92 (1977) (citations omitted). [L]iteralism in the construction of the contract clause ... would make it destructive of the public interest by depriving the State of its prerogative of self protection. *Allied Structural Steel Company v. Spannaus*, 438 U.S. 234, 240, 98 S.Ct. 2716, 57 L.Ed.2d 727 (1978) (citations omitted). As Justice Stewart explained:

[I]t is to be accepted as a commonplace that the Contract Clause does not operate to obliterate the police power of the States. It is the settled law of this court that the interdiction of statutes impairing the obligation of contracts does not prevent the State from exercising such powers as are vested in it for the promotion of the com-

mon weal, or are necessary for the general good of the public, though contracts previously entered into between individuals may thereby be affected. This power, which in its various ramifications is known as the police power, is an exercise of the sovereign right of the Government to protect the lives, health, morals, comfort and general welfare of the people, and is paramount to any rights under contracts between individuals. *Manigault v. Springs*, 199 U.S. 473, 480 [26 S.Ct. 127, 130, 50 L.Ed. 274 (1905)]. As Mr. Justice Holmes succinctly put the matter in his opinion for the Court in *Hudson Water Co. v. McCarter*, 209 U.S. 349, 357 [28 S.Ct. 529, 531, 52 L.Ed. 828 (1908) ]: *One whose rights, such as they are, are subject to state restriction, cannot remove them from the power of the State by making a contract about them. The contract will carry with it the infirmity of the subject matter. Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 241–242, 98 S.Ct. 2716, 2720–2721, 57 L.Ed.2d 727 (1978).

*Keystone Bituminous Coal Association v. DeBenedictis*, 480 U.S. 470, 503–504, 107 S.Ct. 1232, 94 L.Ed.2d 472 (1987). (emphasis added).

**14.** Article I, § 17 of the Pennsylvania Constitution states: "No ... law impairing the obligation of contracts, ... shall be passed," and Article I, § 10 of the federal constitution states, "No State shall ... pass any ... Law impairing the Obligation of Contracts...." The test for unconstitutional impairment of contract is the same under both constitutions. *Parsonese v. Midland National Insurance Company*, 550 Pa. 423, 706 A.2d 814 (1998).

edying of a broad and general social or economic problem. *Energy Reserves Group, Inc. v. Kansas Power and Light Company*, 459 U.S. 400, 411–412, 103 S.Ct. 697, 74 L.Ed.2d 569 (1983) (citation omitted). The court then must determine whether the change in the law [is based] upon reasonable conditions and [is] of a character appropriate to the public purpose justifying [the legislations] adoption. Id. (citation omitted). Generally, the court will defer to the legislative judgment as to the necessity and reasonableness of a particular measure. *Keystone Bituminous Coal Association v. DeBenedictis*, 480 U.S. 470, 505, 107 S.Ct. 1232, 94 L.Ed.2d 472 (1987).

▇▇▇▇ Minimal alteration of contractual obligations by state legislation does not implicate the constitution and ends the Contract Clause analysis at its first stage.[15] Here, the Municipal Intervenors have contracted with waste haulers who, in turn, have passed on the $4.00 per ton

disposal fee to generators. This has resulted in an increase of $0.50 per month in the monthly fee paid by the Individual Petitioners; however, they are not parties to the contracts with CBF, Inc. Because the Municipal Intervenors do not pay for the waste collection and disposal, Chapter 63 has no impact on their contracts.[16] In any case, assuming a contractual impairment, it is limited to $0.50 per customer, per month. This, we conclude, does not constitute a substantial impairment of a contractual relationship. *Allied Structural Steel Co.*, 438 U.S. at 244, 98 S.Ct. 2716.

▇▇▇▇ Assuming *arguendo*, that the $0.50 surcharge effected a substantial impairment of constitutional significance, Petitioners still would not prevail. The impairment is outweighed by the necessity of the regulation and the benefits to the public good. *Empire Sanitary Landfill, Inc. v. Department of Environmental Resources*, 546 Pa. 315, 340, 684 A.2d 1047, 1059 (1996).

---

**15.** By contrast, where legislation effects a substantial impairment of contract, then a careful examination of the nature and purpose of the legislation must be undertaken. *Allied Structural Steel*, 438 U.S. at 245, 98 S.Ct. 2716. The more severe the impairment, the higher the hurdle to be cleared by the state legislation. *Energy Reserves Group, Inc.*, 459 U.S. at 411, 103 S.Ct. 697.

**16.** We note that this Court has held that inasmuch as a municipality is merely a creature of the sovereign created for the purpose of carrying out local government functions, a municipality has no standing to assert the claims of its citizens against the Commonwealth. *City of Pittsburgh v. Commonwealth*, 112 Pa.Cmwlth. 188, 535 A.2d 680 (1987). As in *Pittsburgh*, the thrust of the current Amended Complaint is that the citizens of the municipalities have been adversely affected by the increased fees generated from the enactment of the Waste Disposal Requirements. Although there is an allegation that similarly situated townships, cities and landowners [will] incur monetary losses annually in excess of millions of dollars, Amended Petition, 30, the attached exhibits belie that allegation,

indicating that the increased fees will be passed on to the customers and not the municipalities. Where, in considering the sufficiency of a complaint, it appears that an allegation of fact is based upon interpretation of a document which is attached as an exhibit and that document itself does not support the allegation, the allegation may be disregarded as mere legal conclusion. *Pennsylvania State Spiritualist Association v. First Church of Spiritual Research and Healing*, 430 Pa. 527, 244 A.2d 31 (1968). As there are no other allegations that the municipalities governmental functions have been adversely impacted or that their interest in this matter is substantial, direct and immediate, standing would arguably have been an issue if raised. *William Penn Parking Garage, Inc. v. City of Pittsburgh*, 464 Pa. 168, 346 A.2d 269 (1975). We cannot raise the issue of standing *sua sponte* however, because it is not an issue of subject matter jurisdiction. *Hertzberg v. Zoning Board of Adjustment of the City of Pittsburgh*, 554 Pa. 249, 256, 721 A.2d 43, 46, n. 6 (1998).

The disposal fees are used to enhance the Environmental Stewardship Fund (Fund) established at Chapter 61, 27 Pa. C.S. 6104. The first $50 million of each years collection goes to the Fund and the remainder to the general fund. The Fund is used by the Department of Environmental Protection, *inter alia*, to provide grants for the restoration and protection of watersheds, safe drinking water and wastewater treatment projects, reclamation of abandoned mines and plugging of abandoned oil and gas wells. The Department of Conservation and Natural Resources uses the Fund for state park renovations and improvements. Finally, the Department of Agriculture uses the Fund to advance farmland preservation projects. *See* 27 Pa.C.S. 6105. These activities and projects aid in protecting and preserving the environment throughout the Commonwealth for the use and enjoyment of all its citizens.

▉ The finding of such a significant and legitimate purpose is not by itself, sufficient to justify the impairment of contractual obligations. A court must also satisfy itself that the legislatures adjust-

ment of the rights and responsibilities of contracting parties [is based] upon reasonable conditions and [is] of a character appropriate to the public purpose justifying [the legislations] adoption. *DeBenedictis*, 480 U.S. at 505, 107 S.Ct. 1232 (citations omitted). The Supreme Court has also repeatedly explained that unless the state is itself a contracting party, courts should properly defer to legislative judgment as to the necessity and reasonableness of a particular measure. *Id.* (citations omitted).

▉ In the matter before us, the Commonwealth has identified a need to protect the environment for its citizens [17] and determined to address that need through the Fund. To the extent the $0.50 surcharge could be deemed an impairment, it is nominal, leaving the hurdle to be cleared by Chapter 63 correspondingly low. *Energy Reserves Group, Inc.*, 459 U.S. at 411, 103 S.Ct. 697. Moreover, we refuse to second guess the General Assemblys determination that this is the appropriate way to deal with the environmental challenges facing Pennsylvania.[18] *DeBenedictis*, 480 U.S. at 506, 107 S.Ct. 1232. *See also*

17. The General Assembly has found,

(1) Ninety-six percent of the water-quality-impaired watersheds in this Commonwealth are polluted because of nonpoint sources of pollution such as past mining activities, urban and agricultural runoff, atmospheric deposition, on lot sewage systems and earthmoving.

(2) The Commonwealth continues to have unmet needs in the area of water and sewer infrastructure. New and improved water sources, treatment and distribution systems are necessary for public drinking water supplies.

(3) The Commonwealth owns approximately 2.4 million acres of State park and State forest lands and many of these lands suffer from past environmental problems, including unreclaimed mines, acid mine drainage and abandoned oil and gas wells.

(4) Open space, greenways, recreational trails, river corridors, fish and wildlife habi-

tats, parks and recreation areas and scenic environments protect the environment, conserve natural resources and add value to communities.

(5) State programs and State funding should provide maximum flexibility for elected county and municipal governmental officials to identify, prioritize and address local environmental concerns, including odor abatement problems at sewage treatment plants.

27 Pa.C.S. § 6102.

18. To the extent this surcharge could be deemed a "tax," the United States Supreme Court has held that there can be no impairment of existing contracts when a subsequent tax law is enacted imposing a tax. *Barwise v. Sheppard*, 299 U.S. 33, 57 S.Ct. 70, 81 L.Ed. 23 (1936). A change in taxes cannot be blocked by contract.

*Synagro–WWT, Inc. v. Rush Township,* 204 F.Supp.2d 827 (M.D.Pa.2002) (imposition of $40 tipping fee on every company applying sewage sludge held not to violate contract clause).

For these reasons, we sustain the Commonwealths preliminary objection to Petitioners claim that Chapter 63 has impaired their contract rights.

## UNIFORMITY OF TAXATION

Petitioners next claim that Chapter 63 violates "Article 9, §§ 1 and 2 of the Pennsylvania Constitution" in that it violates the requirements of "tax/fee uniformity and prohibiting special laws exempting property from taxation," noting that "other townships are free to impose such new fees as local ordinance, law or regulation may deem necessary for the collection, transport or disposal of solid waste."[19] Amended Petition at ¶ 34.

 Assuming that the $4.00 per ton tipping fee constitutes a "tax," it is plainly uniform.[20] The legislature has wide discretion in matters of taxation, and there is a strong presumption that tax enactments are constitutionally valid. *Leventhal v. City of Philadelphia,* 518 Pa. 233, 239, 542 A.2d 1328, 1331 (1988). The burden is on the taxpayer to demonstrate that a classification made for the purpose of taxation is unreasonable, and tax legisla-

tion will not be declared unconstitutional unless it is *clearly, palpably, and plainly* violates the Constitution. *Leonard v. Thornburgh,* 507 Pa. 317, 321, 489 A.2d 1349, 1351–1352 (1985) (emphasis in original).

The Amended Petition does not state a claim that the disposal fee established an unreasonable statutory classification or that it is not uniform in its application. Each "operator of a municipal waste landfill [pays] . . . a disposal fee of $4 per ton for all solid waste disposed. . . ." 27 Pa. C.S. § 6301(a). Petitioners have simply not pleaded facts to show that this disposal fee is not imposed uniformly or that the classification *clearly, palpably, and plainly* violates the Constitution. *Leonard,* 507 Pa. at 321, 489 A.2d at 1351–1352. Petitioners unsupported, conclusory allegations are insufficient to overcome the strong presumption of constitutionality.

In light of what Petitioners have pled (or failed to plead), we sustain the Commonwealths preliminary objections to Petitioners claim that Chapter 63 is unconstitutionally infirm by reason of Article IX, 1 and 2 of the Pennsylvania Constitution or under principles of equal protection.

## VAGUENESS CHALLENGE

 Finally, Petitioners claim that Chapter 63 is vague and, therefore, void.

---

**19.** Petitioners' citations to the Pennsylvania Constitution are not related in any way to taxation or taxes. They relate to local government and the authority of municipalities to frame and adopt home rule charters.

**20.** Article VIII, § 1 of the Pennsylvania Constitution provides that "[a]ll taxes shall be uniform upon the same class of subjects. "As noted by the Commonwealth in its brief in support of preliminary objections, Article IX, §§ 1 and 2 of the Pennsylvania Constitution address local government and home rule. They have nothing to do with taxation.

In any case, Petitioners do not assert that uniformity of fees is required by the Pennsylvania Constitution. Where a license fee is imposed on a business subject to regulation by the state exercising its police power, as a condition of that regulated entity doing business it will be considered a license fee, not a tax. *National Biscuit Co. v. City of Philadelphia,* 374 Pa. 604, 615, 98 A.2d 182, 187 (1953). However, inasmuch the pleading on this claim is insufficient, we need not determine whether the disposal fee is a tax or a license fee.

Vague statutes deny due process of law when they do not give fair notice to persons of ordinary intelligence that their contemplated conduct might be unlawful and do not set reasonably clear guidelines for enforcement, thus, inviting arbitrary and discriminatory enforcement. *Park Home v. City of Williamsport*, 545 Pa. 94, 680 A.2d 835, 838 (1996). Chapter 63 is clear and not in the least vague. Again, Petitioners offer conclusory allegations. Their pleading in no way specifies how a single provision in Chapter 63 fails to give fair notice to persons of ordinary intelligence, thus inviting arbitrary and discriminatory enforcement.

Again, we sustain this preliminary objection of the Commonwealth.

## CONCLUSION

Any doubts about the constitutionality of legislation are to be resolved in favor of a finding of constitutionality. *Pennsylvania Liquor Control Board v. Spa Athletic Club*, 506 Pa. 364, 370, 485 A.2d 732, 735 (1984). At the heart of the Amended Petition is the claim that the disposal fee impairs the Petitioners contract rights. It is a tenuous claim because the Municipal Petitioners will not pay the fee, and their residents, who will pay it, are not parties to the contract. In any case, parties have no right to contract to immunize themselves against an exercise of the police power and, thereby, shift the burden of new legislation to citizens who have not so contracted. As noted by Justice Holmes, [o]ne whose rights, such as they are, are subject to state restriction, cannot remove them from the power of the state by making a contract about them. *Hudson County Water Co. v. McCarter*, 209 U.S. 349, 357, 28 S.Ct. 529, 52 L.Ed. 828 (1908).

For all the above-discussed reasons, we sustain the Commonwealths preliminary objections and dismiss the Amended Petition.

## ORDER

AND NOW, this 24th day of December, 2003, the preliminary objections of the Respondents are sustained, and the above-captioned Amended Petition for Review in the Nature of a Complaint in Equity and Suit for Declaratory Judgment and Injunctive Relief is hereby dismissed.

DISSENTING OPINION BY Judge SMITH–RIBNER.

I respectfully dissent from the decision of the majority to sustain the preliminary objections in the nature of a demurrer of the Department of Environmental Protection and its Secretary Kathleen A. McGinty (Department) and of Intervenor Pennsylvania Waste Industries Association (PWIA) to the amended petition for review filed by South Union Township, North Union Township and the City of Uniontown (Municipalities) and residents of each of them (collectively, Petitioners). In this action Petitioners seek to have certain provisions of Chapter 63 of Title 27 of the Pennsylvania Consolidated Statutes, 27 Pa. C.S. §§ 6301–6306, declared unconstitutional and their enforcement enjoined.

Section 6301(a), 27 Pa.C.S. § 6301(a), provides that each operator of a municipal waste landfill shall pay, in the same manner as an existing recycling fee under a separate Act, a disposal fee of $4 per ton of solid waste disposed of at a municipal waste landfill.[1] Section 6303(a), 27 Pa.C.S. § 6303(a), provides that the owner or operator of a municipal waste landfill that collects and remits the fee may pass through

---

**1.** The Act referenced is Chapter 7 of the Municipal Waste Planning, Recycling and Waste

Reduction Act, Act of July 27, 1988, P.L. 566, *as amended*, 53 P.S. §§ 4000.701–4000.706.

and collect the fee from any person who delivered the waste to the landfill as a surcharge on any fee schedule established pursuant to law, ordinance, resolution or contract for solid waste disposal operations at the municipal waste landfill. Section 6303(b), 27 Pa.C.S. § 6303(b), similarly provides that a transporter or transfer station that is charged a fee pursuant to Section 6302, 27 Pa.C.S. § 6302, or pursuant to Section 6303(a) may pass through and obtain the fee from the generator of such waste as a surcharge on any established fee schedule. These provisions were adopted in Section 2 of the Act of June 29, 2002, P.L. 596, effective in ten days.

In ruling upon preliminary objections in the nature of a demurrer, the Court must accept as true all well-pled facts of the complaint and all reasonable inferences therefrom, and it must determine whether the facts pled are legally sufficient to permit the action to continue. *Altoona Housing Authority v. City of Altoona,* 785 A.2d 1047 (Pa.Cmwlth.2001). To sustain preliminary objections, it must appear with certainty to the Court that the law will permit no recovery, and all doubt must be resolved in favor of refusing to sustain the objections. *Baravordeh v. Borough Council of Prospect Park,* 706 A.2d 362 (Pa. Cmwlth.1998).

The heart of this case is the claim of Petitioners and of Intervenor Township of Derry (Derry) that the challenged provisions impair the obligations of contracts in violation of Article I, Section 10 of the United States Constitution and of Article I, Section 17 of the Pennsylvania Constitution.[2] The Department and Intervenor PWIA assert that Petitioners have failed to plead facts sufficient to allow the Court to grant the requested relief. The Department argues initially that the plain language of Section 6301(a) indicates that it applies to operators of municipal waste landfills. Because Petitioners have not alleged that they are operators, this section assertedly cannot be said to violate their constitutional rights. Further, the Department asserts that Section 6303(a) applies only to operators and/or any person who delivered waste to a landfill, and it contends that no Petitioner has alleged that it delivers waste to a landfill.

I note, however, that although the amended petition for review asserts in ¶ 15 that the City of Uniontown entered into a contract with CBF, Inc. that provided for specific rates to move, collect and dispose of the City's solid waste, the attached agreement, Ex. B, identifies the City as "Customer" and contains detailed provisions governing the operation of Customer's vehicles at CBF's landfill. It incorporates an attached Proposal which provides that the agreement is for "disposal of refuse and garbage collected and delivered by the City of Uniontown to the J&L Landfill site," and that the disposal rates "are for municipal waste and construction demolition materials hauled by the City." Thus the City has pleaded facts showing that it delivers waste to the municipal waste landfill. The Department concedes that Section 6303(b) affects the individual Petitioners, although it notes that Sections 6301(a) and 6303(a) provide discretion to operators of landfills and transporters as to whether to pass through the cost or not. Intervenor Derry asserts that the operators and transporters will exercise their discretion to pass through the new dispos-

---

2. As the majority notes, both provisions prohibit the State from passing of laws that impair the obligation of contracts, and the test for unconstitutional impairment is the same under both Constitutions. *Parsonese v. Midland Nat'l Ins. Co.,* 550 Pa. 423, 706 A.2d 814 (1998).

al fee and that in fact they have already done so.[3]

The Department relies upon *Empire Sanitary Landfill, Inc. v. Department of Environmental Resources,* 546 Pa. 315, 684 A.2d 1047 (1996), for the proposition that the constitutional prohibition against impairment of obligations should not be read literally. The Supreme Court stated:

The Contracts Clause does not operate to "obliterate the police power of the States." The prohibition against impairing the obligations of contracts should not be read literally; it requires the court to balance the impairment against the necessity of the regulation and the benefits to the public good.

In Pennsylvania, statutes that are necessary for the general good of the public are constitutional under Article I, § 17 even if they incidentally affect existing contractual obligations. The laws that are in force at the time parties enter into a contract are merged with the other obligations that are specifically set forth in the agreement. Statutes generally should not be applied retroactively to a contractual relationship where the application would alter existing obligations.

*Id.,* 546 Pa. at 340, 684 A.2d at 1059 (citations and footnote omitted). In *Empire Sanitary Landfill* a county adopted a waste disposal flow control ordinance pursuant to the Municipal Waste Planning, Recycling and Waste Reduction Act, Act of July 27, 1988, P.L. 566, *as amended,* 53 P.S. §§ 4000.101–4000.1904, providing that all municipal waste generated in the county should be disposed of at three designat-

ed disposal facilities located in the county. A landfill not designated and a waste transporter sought a declaration that their existing contracts were protected under the Contracts Clause. The statute prohibited contract renewals or new contracts in violation of its requirements after a county's adoption of an approved plan. The Supreme Court affirmed this Court's determination that contracts entered into before the effective date of the ordinance would be impaired for purposes of the Contracts Clause of both Constitutions if the ordinance were applied to them.

The majority accepts the argument that because the impairment in this case is limited to $0.50 per month per customer there is only a minimal alteration of contractual obligations and not a "substantial impairment of a contractual relationship" that is required to trigger Contracts Clause application, citing *Allied Structural Steel Co. v. Spannaus,* 438 U.S. 234, 244, 98 S.Ct. 2716, 2722, 57 L.Ed.2d 727, 736 (1978). As noted in n3 above, however, the fee represents an increase of 16 percent over the negotiated contract rates for disposal in the Uniontown contract, which is a substantial alteration. Furthermore, Petitioners have alleged that the fee will impose millions of dollars in new costs. Section 6302(1), 27 Pa.C.S. § 6302(1), provides that for the fiscal year 2002–2003 the first $50,000,000 in fees collected shall be deposited in the Environmental Stewardship Fund, established in Section 6104 of the Environmental Stewardship and Watershed Protection Act, 27 Pa.C.S. § 6104, and any fees collected thereafter shall be

---

**3.** Derry asserts that the fee will result in an increase in the contract price and a monetary loss to its residents of almost $100,000 over the three-year term of its waste disposal contract. I note that the $4 per ton disposal fee is approximately 16 percent of the average $25.04 per ton of the fees specified in the Uniontown contract, Amended Petition, Ex. B, and I agree that it is economically unrealistic to expect any entity that may pass on such costs not to do so.

deposited in the General Fund.[4]

Assuming arguendo that the Contracts Clause applies, the majority opines that Petitioners cannot prevail because the impairment is outweighed by the necessity of the regulation and the benefits to the public good, citing *Empire Sanitary Landfill*. The majority lists some of the worthy purposes to which the money deposited in the Environmental Stewardship Fund are to be put under Section 6105 of the Environmental Stewardship and Watershed Protection Act, 27 Pa.C.S. § 6105. In my view the majority misses the point of *Empire Sanitary Landfill*. Although that case states that statutes necessary for the public good are constitutional if they "incidentally" affect existing contractual relations, in this case the disposal fee imposed operates primarily through alteration of existing contracts, whether the illusory discretion to pass on costs is exercised or not. In *Empire* the statute acknowledged that general application would be improper, and it provided for an exception for contracts in existence; the statute involved here does not. The mere fact that money raised will be directed to laudatory purposes is not enough to justify any and all interferences with contractual obligations. As citizens we trust that any purpose to which public funds are directed is intended to be worthy.

In *Allied Structural Steel* the United States Supreme Court stated: "If the Contract Clause is to retain any meaning at all, however, it must be understood to impose *some* limits upon the power of a State to abridge existing contractual relationships, even in the exercise of its otherwise legitimate police power." 438 U.S. at 242, 98 S.Ct. at 2721, 57 L.Ed.2d at 736. There is no circumstance in this case similar to that in *Home Building & Loan Ass'n v. Blaisdell*, 290 U.S. 398, 54 S.Ct. 231, 78 L.Ed. 413 (1934), a case discussed in *Allied Structural Steel Co.*, where a state mortgage moratorium law was upheld against a Contracts Clause attack because it expressly addressed an emergency need of homeowners for protection from foreclosure, it was enacted to protect a basic societal interest and the relief was appropriately tailored to the emergency.

The majority rejects Petitioners' argument that this Court's recent decision in *Northern Tier Solid Waste Authority v. Department of Revenue*, 825 A.2d 793 (Pa. Cmwlth.2003), should be given stare decisis effect to prevent the sustaining of the Department's preliminary objections. In *Northern Tier* certain county solid waste authorities who receive municipal waste and who have existing contracts with haulers and generators brought an action in this Court's original jurisdiction challenging the same solid waste disposal fee provisions at issue in the present case. In one count they raised a Contracts Clause challenge similar to that involved here. The authorities alleged that they could not pass on the $4 per ton surcharge to out-of-state customers, state agencies and entities with which they had contracts. Accepting those averments as true, the Court overruled a

---

**4.** Section 1 of the Act of December 30, 2002, P.L. 596, 27 Pa.C.S. § 6302 (note), provides that for the fiscal year 2004–2005 the first $16,500,000 of the fee shall be deposited in the Agricultural Conservation Easement Purchase Fund. These large figures in the statute bear out the allegations of Petitioners, which must be accepted on a demurrer in any event, that the imposition of the disposal fee will result in millions of dollars in added costs.

On a related point, I believe that these statutory provisions directing the depositing of large sums of money realized from the collection of the disposal fee into various state funds are facially sufficient to show that the disposal fee is a revenue-raising tax, not a license fee designed to reimburse a state agency for the expense of supervision and regulation. *See National Biscuit Co. v. City of Philadelphia*, 374 Pa. 604, 98 A.2d 182 (1953).

demurrer. I agree that the allegations in the present case are distinct from those in *Northern Tier*. Nevertheless, the recent refusal to sustain a demurrer in a case challenging the same provisions weighs in favor of refusing to sustain the demurrer here.[5]

President Judge COLINS and Judge FRIEDMAN join in the dissent.

---

**5.** Finally, I disagree that reference in a contract as to which party should be responsible for any increased fees imposed by the state means that any such fees are already part of the contract. Similarly, characterizing the fees as a "surcharge" does not mean that imposing them does not alter obligations of contracts.