554 A.2d 964

Kathleen Carter **KERSHNER**

v.

**PRUDENTIAL INSURANCE COMPANY, Appellant.**

Superior Court of Pennsylvania.

Argued Dec. 20, 1988.

Filed March 3, 1989.

96

Charles W. Craven, Philadelphia, for appellant.

Richard S. Wasserbly, Doylestown, for appellee.

Before CIRILLO, President Judge, and BROSKY, McEWEN, DEL SOLE, MONTEMURO, BECK, TAMILIA, POPOVICH and JOHNSON, JJ.

JOHNSON, Judge:

In this appeal we are asked to decide whether the trial court committed error in granting a directed verdict. Finding the directed verdict to have been granted upon grounds

outside the boundaries of the controversy as defined by the parties' stipulations, we reverse and remand.

Kathleen Carter Kershner, appellant, brought an action against her no-fault automobile insurer, the Prudential Insurance Company, for medical expenses and lost wages alleged to be due her under the personal injury protection provisions of her policy. Kershner had carried auto insurance with Prudential since 1976. Subsequently she added and subtracted vehicles and changed her coverage in several respects to minimize cost. In 1981 she allegedly added a collateral benefits option to her policy designating the Prudential coverage as excess over other insurance held, and for this she received a reduction in her premium to reflect Prudential's decreased risk. Her primary health coverage consisted of comprehensive medical insurance policies with Massachusetts Mutual Insurance Company and Postmaster's Health Insurance. Kershner had no disability coverage.

On September 25, 1982 Kershner was seriously injured in an automobile accident and was unable to work for several months. Because she had no disability insurance, the board of directors of her employer of sixteen years, the Delaware Valley Mental Health Foundation, voted to give Kershner a sum equal to the salary she would have earned during this period. Kershner's medical insurance covered her medical bills. When Kershner sought to recover medical expenses and wage loss from her auto policy, Prudential denied her claim on the basis of the collateral benefits clause. Kershner initiated an action against Prudential, alleging that she never added a collateral benefits clause to her policy.

At commencement of the jury trial the parties agreed to a number of stipulations and presented them to the court. The court in turn furnished them to the jury with the explanation that these were to be considered as true and agreed upon facts and conclusions. The parties agreed that Kershner was injured in the automobile accident, that Prudential was her automobile insurer, that the medical and related bills totaled $29,976.19, that these were fair and

reasonable charges, and that Prudential had already paid $5,137.00 of this amount. The parties agreed that if the collateral benefits clause was not in the contract, then Prudential would pay Kershner the balance of this sum and would also pay Kershner's lost wages of $2,958.00 plus 18% interest. The thirteenth and fourteenth stipulations read:

13: If [Kershner's] policy did contain a coordination of benefits clause at the time of the accident then the only issue for the jury is whether the payments of money by Delaware Valley Mental Health Foundation to plaintiff for the period from September, 25, 1982 to January 1, 1983 is a benefit that precludes [Kershner's] claim for those monies.

14: That the balance of the medical bills not paid by Prudential Insurance Company, balance being $24,839.34, has been paid by collateral sources including Massachusetts Mutual Health Insurance.

N.T., 9–18–86, p. 65.

Thus, the stipulations defined the primary issue, whether Kershner's policy did, in fact, contain a collateral benefits clause. Kershner, her own main witness, testified that she never received the endorsement booklet containing the clause. Upon cross-examination, she revealed less certainty on this point. Prudential's witnesses testified that an endorsement booklet is always sent out with the body of the policy. A claims administrator testified to and documented the reduction in premium on Kershner's policy reflecting Prudential's decreased liability. In preparation for a finding that the clause was indeed part of the policy, Kershner's employer testified that the payment made by the board of directors of the Delaware Valley Mental Health Foundation for the period during which Kershner was disabled was a gratuitous act and was not made pursuant to a pre-arranged plan.

Following the close of testimony, the court extracted the factual issue it would submit to the jury, framing the question in terms of the evidence given: Did Kershner prove by a preponderance of the evidence that she did not

receive the endorsement booklet? Once the jury resolved this fact question, it would be left to the court to interpret the clause. *Standard Venetian Blind Co. v. American Empire Insurance Co.,* 503 Pa. 300, 469 A.2d 563 (1983). Both counsel agreed upon the form and appropriateness of this question. On September 22, 1986 the jury returned a verdict of "no" to the question, thereby finding that Kershner did, in fact, receive the endorsement booklet. From this verdict the court concluded as a matter of law that the clause was a part of the insurance contract at the time of the accident. Therefore, by stipulation, the only remaining issue was whether the sum granted by Kershner's employer barred her recovery for lost wages from Prudential.

However, at this point Kershner asked the court for a directed verdict, which was granted. The court explained that because Prudential had not met its burden of producing evidence of the primary insurance contracts, it could not prevail. This issue had not been in the case until raised at this point by the court. The court denied Kershner's request for attorney's fees. Following the filing and denial of post-trial motions, both parties appealed, Prudential from the directed verdict and Kershner from the trial court's denial of her request to be awarded attorney's fees.

On June 15, 1988 a panel of this Court affirmed the trial court on both issues. One panel member concurred on the issue of attorney's fees but dissented from the affirmance of the granting of the directed verdict because, on the basis of the stipulation, the existence of and the status of the collateral insurance was not at issue. On July 20, 1988, Prudential filed a petition for reargument on the issue of whether the trial court's granting of the directed verdict should be reversed. By order of October 24, 1988 this Court granted reargument en banc limited solely to Prudential's appeal, No. 600 Philadelphia 1987, the issue of whether the directed verdict was proper. The order severed Kershner's appeal from the trial court's denial of attorney's fees, No. 863 Philadelphia 1987, and ordered the judgment on that issue reinstated.

■ We now address the sole issue before the Court en banc: whether the trial court's grant of the directed verdict was proper. Key to the resolution of this issue is the role of the stipulations in this trial. It is well-settled that parties may bind themselves by stipulation on matters relating to individual rights and obligations, as long as their stipulations do not affect the court's jurisdiction or due order of business. *Tyler v. King*, 344 Pa.Super. 78, 496 A.2d 16 (1985). Moreover, stipulations are binding upon the court as well as on the parties agreeing to them. *Park v. Greater Delaware Valley Savings & Loan Association*, 362 Pa.Super. 54, 523 A.2d 771 (1987). The stipulations discussed above were submitted in writing to the trial court at the beginning of the trial, accepted by both parties and read to the jury by the court with the instructions that they were deemed true.

The parties' stipulations limited the issue in this case to whether or not a coordination of benefits clause was in Kershner's insurance contract. This, in turn, hinged upon the factual question of whether or not Kershner received the endorsement booklet. The jury decided that she had. The court then properly determined, applying the principle of insurance contract interpretation articulated in *Standard Venetian Blind, supra,* that if the clause was in the contract, Kershner was presumed to know its meaning. This application of law was not contested. The The No–Fault Motor Vehicle Insurance Act[1] supplied the meaning of the clause:

> (b) The owner or operator of a motor vehicle may elect to provide for security in whole or in part for the payment of basic loss benefits through a program, group, contract or other arrangement that would pay to or on behalf of the victim ... allowable expense, loss of income, work loss, replacement services loss and survivors loss. In all such instances, each contract of insurance issued by an insurer shall be construed to contain a provision that all

1. 40 P.S. §§ 1009.101 to 1009.701, Repealed. 1984, Feb. 12, P.L. 26, No. 11, § 8(a), effective October 1, 1984.

basic loss benefits provided therein shall be in excess of any valid and collectible benefits otherwise provided through such program, group, contract or other arrangement as designated at the election of the owner or operator which shall be primary.

40 P.S. § 1009.203(b) (repealed). Had Kershner been found not to elect a coordination of benefits clause, she could have recovered twice for medical charges; *Hauck v. Ohio Casualty Group of Insurance Companies*, 361 Pa.Super. 370, 522 A.2d 628; *alloc. denied*, 516 Pa. 641, 533 A.2d 712 (1987); *Steppling v. Pennsylvania Manufacturers Association Insurance Co.*, 328 Pa.Super. 419, 477 A.2d 515 (1984); and twice for work-loss benefits. *See Antanovich v. Allstate Insurance Company*, 507 Pa. 68, 488 A.2d 571 (1985).

The parties agreed that if the clause were found to be in the contract, then the sole remaining issue would be whether Kershner was due wage loss benefits. However, the court disregarded the stipulation and injected into the case the issue of the existence of and status of the other insurance and the question of who had the burden of proving these facts. The court decided that the clause was an exclusion, that Prudential thus had the burden of producing evidence of the primary insurance, and, because Prudential did not produce this at trial, the court granted a directed verdict in favor of Kershner. This was improper. The status of the clause was never at issue.

Nor was the existence of the other contracts at issue. The parties specifically stipulated that "the balance of the medical bills had been paid by collateral sources including Massachusetts Mutual Health Insurance." The obvious inference to be drawn from this stipulation was that the parties agreed that Kershner held health insurance covering her medical expenses. The trial court erred in ruling that evidence of these health insurance policies was not before the court. Further, Prudential would have been justified in relying on the stipulation as evidence of the collateral insurance. The trial court could not properly rule, after the opportunity to present evidence had ceased to exist, and

given the stipulations, that Prudential's failure to put the contracts into evidence warranted a directed verdict in Kershner's favor. *See Lynch v. Metropolitan Life Insurance Company*, 427 Pa. 418, 235 A.2d 406 (1967).

Prudential argues on appeal that the clause was not an exclusion but rather was an option that, once chosen, converted the entire insurance contract into one for excess insurance only. In light of our determination that this issue is irrelevant to the resolution of this case, we do not address it.

■ In accordance with the stipulations, the decision remaining for the trial court was whether Prudential is obligated to pay work loss benefits. The trial court decided, and we agree, that Prudential must pay Kershner work loss benefits. The uncontradicted testimony was that Kershner selected a coordination of benefits clause on October 27, 1981, and that the accident occurred on September 25, 1982. Because Kershner could not work for several months following the accident and because she did not have disability coverage, her employer's Board of Directors voted in early October of 1982 to assist this valued, long-time employee by giving her a lump sum grant. The Board made the decision *after* the accident. It is impossible for Kershner to have designated this grant as primary work loss coverage at the time that she added the coordination of benefits clause to her policy, as the statute requires. *See* 40 P.S. § 1009.-203(b), *supra.*

The dispositive fact, that the Board voted to grant Kershner a sum of money after the accident occurred, was not in dispute under any possible construction of the testimony. It was thus the court's province to apply the No–Fault Act to determine whether Kershner could have chosen this grant from her employer as primary coverage at the time that she adopted the coordination of benefits clause. Common sense supports the court's conclusion that Kershner could not possibly have chosen an alternative not in existence at the time of her election. The trial court then assigned the value of the work loss benefits in accordance with the stipulated facts. These were that work loss bene-

fits, if due Kershner, amounted to $2,958.00 plus 18% interest from January 1, 1983. The interest sum complies with the directive in the No–Fault statute that overdue payments shall bear interest at the rate of 18%. 40 P.S. § 1009.-106(a)(2). Kershner is entitled to work loss benefits in this amount.

We reiterate that the stipulations defining the issues in this case were binding upon the trial court. These stipulations precluded the court from addressing the issues upon which it based its grant of a directed verdict for Kershner. Following the finding that the coordination of benefits clause was part of the contract, all that was left for the court was to decide the work loss benefits issue. The court's conclusion that Kershner was entitled to work loss benefits from Prudential is independent of its error and thus can stand.

Hence, for the aforementioned reasons, we reverse the order of the trial court granting the directed verdict. We remand to allow the court to enter judgment in favor of Kershner for work loss benefits in the amount of $2,958.00 plus 18% interest from January 1, 1983.

Order reversed. Case remanded. Jurisdiction relinquished.

DEL SOLE, J., joins and files a concurring statement, which is joined by McEWEN, J.

DEL SOLE, Judge, concurring:

I join the decision of the Majority as expressed in the Opinion by my distinguished colleague, Judge Justin Johnson. I write separately only to point out that the issue before this Court did not include the question of the failure of the trial court to award counsel fees. I believe that counsel fees should have been awarded to the Appellant on that portion of the claim involving the wage loss benefits. The Majority Opinion clearly points out that the Appellant received payment from her employer based upon a decision made by her employer after the accident. It is inconceivable that the carrier could have construed this to be a coordination of benefits matter. Therefore, I believe that

the carrier's refusal to pay work loss benefits was unreasonable and counsel fees related to that recovery should have been awarded.

McEWEN, J. joins concurring statement by DEL SOLE, J.