706 A.2d 814

Patricia M. PARSONESE, Appellee,

v.

MIDLAND NATIONAL INSURANCE CO., and Christopher M. Meyers, Karen Meyers Torina, and Dennis Meyers, Appellants.

**Appeal of Christopher M. MEYERS.**

Supreme Court of Pennsylvania.

Argued Oct. 20, 1997.

Decided Jan. 20, 1998.

Randal S. White, Doylestown, for Meyers.

Robert F. Ruehl, Doylestown, for Parsonese.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO and NEWMAN, JJ.

## OPINION OF THE COURT

FLAHERTY, Chief Judge.

This appeal challenges the constitutionality of the retroactive application of a statute affecting life insurance contracts. The trial court held that, if applied retroactively, the statute would violate the contracts clause of the state and federal constitutions by impairing the life insurance contract at issue in this case. Accordingly, the court did not apply the statute, but enforced the life insurance contract without its modification by the statute.

The case was tried in the court of common pleas on stipulated facts and issues filed pursuant to court order, followed by cross-motions for summary judgment. The stipulation set forth the following facts.

On June 12, 1988, Midland National Insurance Company issued a life insurance policy to Francis J. Meyers, Jr. (Meyers), the former husband of appellee Parsonese. Meyers named his two younger children, Christopher and Karen, as the primary beneficiaries and a friend, Carolyn Downs, as the contingent beneficiary.

On July 27, 1991, Meyers married Parsonese. This was Meyers' third marriage. Dennis Meyers is Meyers' son from his first marriage. Karen Meyers Torina and Christopher Meyers are Meyers' children from his second marriage. No children were born to Meyers and Parsonese.

On August 27, 1992, Meyers changed his previous beneficiary designations. He named Parsonese as the primary beneficiary and his three children as contingent beneficiaries. Midland approved and recorded these designations at its home office on September 10, 1992.

Effective December 16, 1992, the Pennsylvania Probate, Estates and Fiduciaries Code was amended, inter alia, by the addition thereto of section 21 of Act No. 152 of 1992, P.L. 1163, codified as 20 Pa.C.S. § 6111.2.

On April 2, 1993, Meyers executed a will in which he left nothing to Parsonese or to his oldest son, Dennis. Contem-

plating divorce, Meyers and Parsonese entered into a marital agreement on July 6, 1993. A divorce decree was entered on September 27, 1993, which incorporated the marital agreement of July 6, 1993.

Meyers died on May 4, 1994.

The parties further stipulated that the issues, under the facts agreed, are: (1) whether 20 Pa.C.S. § 6111.2 mandates that the life insurance proceeds be paid to Meyers' children; and (2) whether the provisions of 20 Pa.C.S. § 6111.2 are constitutional.

The trial court, ruling on cross-motions for summary judgment, held that Parsonese was entitled to the insurance proceeds because 20 Pa.C.S. § 6111.2 was unconstitutional. Our jurisdiction is based on 42 Pa.C.S. § 722(7) which grants this court exclusive jurisdiction when a court of common pleas has held any state statute to be unconstitutional.

■ The first issue raised by appellants is a challenge to the standing of Parsonese. Appellants argue that because she is not seeking redress for any of her own contractual rights, but is instead arguing that section 6111.2 unconstitutionally impairs the life insurance contract between Meyers and Midland, she lacks standing.

■ The simplest of several sufficient answers is that appellants stipulated to the facts and issues in the case without raising the issue of standing. Parties may by stipulation resolve questions of fact or limit the issues, and, if the stipulations do not affect the jurisdiction of the court or the due order of the business and convenience of the court, they become the law of the case. *Foote v. Maryland Casualty Co.*, 409 Pa. 307, 186 A.2d 255, 258 (1962); *Foley Bros., Inc. v. Commonwealth, Dept. of Highways*, 400 Pa. 584, 163 A.2d 80, 83–84 (1960); *Kershner v. Prudential Ins. Co.*, 382 Pa.Super. 95, 554 A.2d 964, 966–67 (1989); *Shapley v. Commonwealth*, 150 Pa.Cmwlth. 106, 615 A.2d 827, 828 (1992). The parties' stipulation of the issues in the case did not in any way affect the jurisdiction of the court nor offend the business or convenience of the court, and thus became the law of the case. The

issues do not include or permit a challenge to the standing of Parsonese to seek the life insurance proceeds or to question the constitutionality of 20 Pa.C.S. § 6111.2.

The remaining issues are whether section 6111.2, applied to this case, requires the life insurance proceeds to be paid to Meyers' children rather than to Parsonese, and, if so, whether the statute is unconstitutional.

■ At the time of Meyers' death, 20 Pa.C.S. § 6111.2 stated:

### § 6111.2 Effect of divorce on designation of beneficiaries

If a person domiciled in this Commonwealth at the time of his death is divorced from the bonds of matrimony after designating his spouse as beneficiary of a life insurance policy ..., any designation in favor of his former spouse which was revocable by him after the divorce shall become ineffective for all purposes unless it appears from the wording of the designation or from either a court order or a written contract between the person and his spouse that the designation was intended to survive the divorce....

Although the statute was amended in 1994, the clarifying amendment does not affect the substance of the statute.[1] If the statute were to be applied to the facts of this case, Parsonese would be treated as if she had predeceased Meyers. This would result in replacing primary beneficiary Parsonese

---

1. The statute was amended in 1994 to clarify the language "shall become ineffective for all purposes," by substituting "and shall be construed as if such former spouse had predeceased him unless it appears from the wording of the designation, a court order or a written contract between the person and such former spouse" for "unless it appears from the wording of the designation or from either a court order or a written contract between the person and his spouse."

This amendment ... is made to provide further guidance to insurance companies so as to ensure that when a divorce has rendered a life insurance beneficiary designation ineffective for all purposes, an insurance company treats the former spouse as having predeceased the spouse making the designation for purposes of making payment to any secondary beneficiary under the policy. This amendment is made only to reinforce the result intended by the language "ineffective for all purposes" within the context of this section.

20 Pa.C.S. § 6111.2 Official Comment—1994.

by Meyers' children, who were the contingent beneficiaries. The plain meaning of the statute mandates this result.

The remaining question is whether the statute, if applied to this case, is constitutional. Parsonese argues that, if applied retroactively, section 6111.2 would violate Article I, § 17 of the Pennsylvania Constitution, which states: "No ... law impairing the obligation of contracts, ... shall be passed," and Article I, § 10 of the federal constitution stating: "No State shall ... pass any ... Law impairing the Obligation of Contracts...."

Parsonese cites *First National Bank of Pennsylvania v. Flanagan*, 515 Pa. 263, 528 A.2d 134, 137 (1987), in which this court stated:

The contracts clauses of the United States and Pennsylvania Constitutions protect contracts freely arrived at by the parties to them from subsequent legislative impairment or abridgment. *Beaver County Building and Loan Ass'n v. Winowich*, 323 Pa. 483, 492–94, 187 A. 481, 485–86 (1936).... We have held that:

Any law which enlarges, abridges, or in any manner changes the intention of the parties as evidenced by their contract, imposing conditions not expressed therein or dispensing with the performance of those which are a part of it, impairs its obligation, whether the law affects the validity, construction, duration, or enforcement of the contract[.]

. . . .

The *amount* of impairment of the substantive obligation of a contract is immaterial. Any deviation from its terms, however slight, falls within the meaning of the constitution[.]

*Beaver County Building and Loan Ass'n, supra* 323 Pa. at 492–93, 187 A. at 485 (citations omitted)(emphasis in original). A later law cannot abridge rights under a prior contract. [Only the] substantive laws in effect when the parties enter into a contract are implicitly incorporated into

it. *DePaul v. Kauffman,* 441 Pa. 386, 398, 272 A.2d 500, 506 (1971).

Parsonese argues that Meyers acquired contractual rights from Midland on June 12, 1988, when he purchased a life insurance policy; he exercised those rights on August 27, 1992 when he designated Parsonese as his primary beneficiary; Midland accepted Meyers' beneficiary designation on September 10, 1992 whereby Parsonese received a contract expectancy which would result in vested rights against Midland when Meyers died; on December 16, 1992, the Pennsylvania legislature passed a law which would abridge, impair and nullify the aforesaid rights; and such absolute abrogation of substantive contract rights is constitutionally impermissible. Referring to *Commonwealth v. Edmunds,* 526 Pa. 374, 586 A.2d 887, 895 (1991), Parsonese cites cases from other jurisdictions which have refused to apply similar legislation under similar circumstances: *First National Bank & Trust Co. of McAlester v. Coppin,* 827 P.2d 180 (Okl.1992); *Aetna Life Ins. Co. v. Schilling,* 67 Ohio St.3d 164, 616 N.E.2d 893 (1993). Finally, Parsonese argues that the trial court refused to apply the statute retroactively and thus avoided the constitutional issue, as it was bound to do. *In re Fiori,* 543 Pa. 592, 673 A.2d 905, 909 (1996); *Krenzelak v. Krenzelak,* 503 Pa. 373, 469 A.2d 987, 990–91 (1983); *Mt. Lebanon v. County Board of Elections,* 470 Pa. 317, 368 A.2d 648, 650 (1977).

Appellants argue that the contracts clauses of the state and federal constitutions are not so absolute or unyielding as Parsonese represents. They argue that the contract clause does not prohibit a state from exercising its police power, even if contractual relationships are altered. They cite many United States Supreme Court cases; for example, they rely on *Allied Structural Steel Co. v. Spannaus,* 438 U.S. 234, 241, 98 S.Ct. 2716, 2721, 57 L.Ed.2d 727, 734 (1978):

> ... [T]he Contract Clause does not operate to obliterate the police power of the States. "It is the settled law of this court that the interdiction of statutes impairing the obligation of contracts does not prevent the State from exercising such powers as are vested in it for the promotion of the

common weal, or are necessary for the general good of the public, though contracts previously entered into between individuals may thereby be affected. This power, which in its various ramifications is known as the police power, is an exercise of the sovereign right of the Government to protect the lives, health, morals, comfort and general welfare of the people, and is paramount to any rights under contracts between individuals."

They add that if the contract clause were interpreted literally, an individual could evade any state regulation simply by entering into private contracts. They quote Mr. Justice Holmes in *Hudson Water Co. v. McCarter*, 209 U.S. 349, 357, 28 S.Ct. 529, 531, 52 L.Ed. 828, 832 (1908): "One whose rights, such as they are, are subject to state restriction, cannot remove them from the power of the State by making a contract. The contract will carry with it the infirmity of the subject matter."

Appellants argue that the United States Supreme Court has increasingly recognized and given great deference to the right of states to use their police power, even at the expense of impairing individual contracts. They cite, e.g., *Home Building & Loan Ass'n v. Blaisdell*, 290 U.S. 398, 442, 54 S.Ct. 231, 241, 78 L.Ed. 413, 431 (1934), and *United States Trust Co. v. New Jersey*, 431 U.S. 1, 22, 97 S.Ct. 1505, 1517, 52 L.Ed.2d 92, 109 (1977). They also cite state cases which held statutes valid and constitutional despite the fact that they retroactively impaired contracts. *Zeuger Milk Co. v. Pittsburgh School Dist.*, 334 Pa. 277, 5 A.2d 885 (1939); *Leiper v. Baltimore & Philadelphia RR. Co.*, 262 Pa. 328, 105 A. 551 (1918). These two cases involved heavily regulated industries, and the rationale of the decisions included the principle that "contracts made with reference to any matter that is subject to regulation under the police power must be understood as made in reference to the possible exercise of that power," 5 A.2d at 886, and that when "parties enter into a contract with a public service corporation relating to rates, they are presumed to do so with the knowledge that the right of the State to exercise this police power in the future is expressly reserved...." 262

Pa. at 332, 105 A. 551. *See also Energy Reserves Group, Inc. v. Kansas Power & Light Co.*, 459 U.S. 400, 103 S.Ct. 697, 74 L.Ed.2d 569 (1983).

Appellants recognize that recent United States Supreme Court cases limit the power of states to impair contracts under the police powers of the state, holding that the degree to which a contract is impaired determines the degree to which the statute will be scrutinized for reasonableness. *Allied Structural Steel, supra,* is such a case. The Court stated: "If the Contract Clause is to retain any meaning at all, however, it must be understood to impose *some* limits upon the power of a State to abridge existing contractual relationships, even in the exercise of its otherwise legitimate police power." 438 U.S. at 242, 98 S.Ct. at 2721, 57 L.Ed.2d at 734 (emphasis in original). The Court then reviewed a series of decisions arising from the unprecedented emergencies brought on by the Great Depression. *Id.* One of the cases was *Home Building & Loan Ass'n v. Blaisdell, supra,* in which the Court upheld a mortgage moratorium law enacted in Minnesota in 1933 to provide relief for homeowners threatened with foreclosure. The Court stated that

despite the Contract Clause, the States retain residual authority to enact laws "to safeguard the vital interests of [their] people." In upholding the state mortgage moratorium law, the Court found five factors significant. First, the state legislature had declared in the Act itself that an emergency need for the protection of homeowners existed. Second, the state law was enacted to protect a basic societal interest, not a favored group. Third, the relief was appropriately tailored to the emergency that it was designed to meet. Fourth, the imposed conditions were reasonable. And, finally, the legislation was limited to the duration of the emergency.

The *Blaisdell* opinion thus clearly implied that if the Minnesota moratorium legislation had not possessed the characteristics attributed to it by the Court, it would have been invalid under the Contract Clause of the Constitution.

438 U.S. at 242, 98 S.Ct. at 2721, 57 L.Ed.2d at 735 (footnote and citations omitted). The Court then reviewed three cases that followed closely in *Blaisdell*'s wake. In *W.B. Worthen Co. v. Thomas*, 292 U.S. 426, 54 S.Ct. 816, 78 L.Ed. 1344 (1934); *W.B. Worthen Co. v. Kavanaugh*, 295 U.S. 56, 55 S.Ct. 555, 79 L.Ed. 1298 (1935); and *Treigle v. Acme Homestead Ass'n*, 297 U.S. 189, 56 S.Ct. 408, 80 L.Ed. 575 (1936), the Court struck down state statutes under the contract clause for failing to meet the standard established in *Blaisdell*. 438 U.S. at 243, 98 S.Ct. at 2721–22, 57 L.Ed.2d at 735.

 In applying these principles, our first step is to determine whether the statute operated as a substantial impairment of a contractual relationship. Once again, *Allied Structural Steel, supra*, provides guidance.

The severity of an impairment of contractual obligations can be measured by the factors that reflect the high value the Framers placed on the protection of private contracts. Contracts enable individuals to order their personal and business affairs according to their particular needs and interests. Once arranged, those rights and obligations are binding under the law, and the parties are entitled to rely on them.

438 U.S. at 245, 98 S.Ct. at 2723, 57 L.Ed.2d at 737. As in *Allied Structural Steel*, the contractual impairment effected in this case is indeed severe, virtually total. Selection of a beneficiary is the entire point of a life insurance policy. The statute in this case eliminated the insured's designation and replaced his primary beneficiary, Parsonese, with contingent beneficiaries who were not intended by the insured to be primary beneficiaries. The very essence of Meyers' contract with Midland was undermined by the operation of the statute.

 This severe contractual impairment calls for careful scrutiny of the nature and purpose of the legislation involved here. Examining the factors listed in *Allied Structural Steel, supra*, we look first at the urgency of the need for the legislation. The legislation in *Blaisdell, supra*, recited the emergency need to protect homeowners due to the severe economic impact of the Great Depression. The legislation at

issue here has no emergency basis whatever, but "protects" only divorced owners of life insurance policies, and of those, only ones who inadvertently neglect to revoke pre-divorce designations of their spouses as beneficiaries. This is reminiscent of *Adams' Estate*, 447 Pa. 177, 288 A.2d 514, 517 (1972), where we said:

> The court below looked to what it termed "basic equities" in deciding against the divorced wife.... *Divorce does not in all cases and automatically spell the end of interest in or even concern for one former spouse by the other.... [T]o hold that forthwith upon divorce the husband must be presumed to intend to terminate a contractual arrangement which benefits the other is to engage in speculation* not warranted by this record or required by Pennsylvania law.

(Emphasis added.) Section 6111.2 adopts the opposite reasoning despite the continuing validity of the quoted statement. In any event, the circumstances are markedly not an emergency. Rather, they are more like *W.B. Worthen Co. v. Thomas, supra,* wherein an Arkansas law was held to be unconstitutional "since it was not precisely and reasonably designed to meet a grave temporary emergency in the interest of the general welfare." *Allied Structural Steel,* 438 U.S. at 243, 98 S.Ct. at 2721–22, 57 L.Ed.2d at 735.

The second factor is related, questioning what interest or group is protected by the legislation. In *Blaisdell,* the law protected a basic societal interest, viz., preservation of "homes and lands which furnish those in possession the necessary shelter and means of subsistence." 290 U.S. at 445, 54 S.Ct. at 242, 78 L.Ed. at 432. There is no similar interest or group at risk in this case, but a special group is being protected without any suggestion that their "lives, health, morals, comfort and general welfare" need special protection under the police power of the state.

The remaining factors identified in *Allied Structural Steel*— whether relief was appropriately tailored to the emergency, whether imposed conditions were reasonable, and whether relief was limited to the duration of the emergency—all weigh

in favor of holding that the legislation in question violates the contracts clause. All of these factors involve the relation between the emergency and the legislative provisions designed to meet that emergency. If there is no emergency, the legislation cannot bear a close relation to an emergency. Notably, the legislative relief is unlimited in duration and makes no pretense of being related to any emergency.

Finally, it is critical to our analysis that application of the statute in this case would be retroactive application. The contract in question is Meyers' beneficiary designation on August 27, 1992, in which he named Parsonese as primary beneficiary and his three children as contingent beneficiaries. The legislation, 20 Pa.C.S. § 6111.2, was enacted on December 16, 1992. To apply section 6111.2, substituting Meyers' children for Parsonese as beneficiaries of the life insurance policy, requires retroactive application of the December 16, 1992 statute to the August 27, 1992 contract between Meyers and Midland. Retroactivity has been a weighty factor in many of the cases which held that legislation violated the contracts clause. *E.g., Allied Structural Steel, supra; United States Trust Co. v. New Jersey, supra; W.B. Worthen Co. v. Thomas, supra; First National Bank v. Flanagan, supra; First National Bank & Trust Co. v. Coppin, supra;* and *Aetna Life Ins. Co. v. Schilling, supra.*

Considering all these factors, we hold that the trial court was correct in holding that 20 Pa.C.S. § 6111.2, if applied to this case, would be unconstitutional, in violation of the contract clause. We also agree with the trial court's holding that the remedy is to refuse to apply the statute retroactively despite the intention to establish retroactivity expressed in section 27(d) of Act 1992, Dec. 16, P.L. 1163, No. 152, and section 10(4) of Act 1994, Dec. 1, P.L. 655, No. 102. If the statute is not applied retroactively, the constitutional conflict is avoided in this case. This approach is appropriate under *In re Fiori, supra,* and *Krenzelak v. Krenzelak, supra,* as well as 1 Pa.C.S. § 1925 (Constitutional construction of statutes) which provides: "The provisions of every statute shall be severable. If any provision of any statute or the application thereof to any

person or circumstance is held invalid, the remainder of the statute, and the application of such provision to other persons or circumstances, shall not be affected thereby...." This rule of statutory construction, in aid of the presumption in 1 Pa.C.S. § 1922(3) that "the General Assembly does not intend to violate the Constitution of the United States or of this Commonwealth," clearly justifies the decision to reject retroactive application of the statute, limiting it to prospective application. For these reasons, we will affirm the trial court in all respects.

Order affirmed.