NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-3996
_____

MASSACHUSETTS MUTUAL LIFE
INSURANCE COMPANY

v.

ELLIN KAISER CURLEY;
KAREN KLEIN KAISER, Individually and as
Administratrix of the Estate of Laurence J. Kaiser

KAREN KLEIN KAISER,
Appellant
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. Civ. No. 07-cv-01560)
District Judge: Honorable Edmund V. Ludwig
_____

Argued October 27, 2011
_____

Before: SLOVITER, GREENAWAY, JR., and ALDISERT, *Circuit Judges*.
_____

(Opinion Filed: January 25, 2012)
_____

Eva H. Posman (argued)
570 Lexington Avenue, Suite 1600
New York, NY 10022

Mark C. Cawley

Saul Ewing LLP
Centre Square West
1500 Market St., 39th Floor
Philadelphia, PA 19102
        *Counsel for Appellant*

Douglas J, Varga (argued)
Zeldes, Needle & Cooper P.C.
1000 Lafayette Boulevard, 5th Floor
Bridgeport, Connecticut 06604

Glenn A. Weiner
Klehr Harrison Harvey Branzburg LLP
1835 Market Street, Suite 1400
Philadelphia, PA 19103
        *Counsel for Appellee, Ellin Kaiser Curley*

_____

OPINION

_____


GREENAWAY, JR., *Circuit Judge*.

Massachusetts Mutual Life Insurance Company ("Mass Mutual") brought this interpleader action against Ellin Curley and Karen Kaiser, individually and as the administratrix of the Estate of Laurence Kaiser, her deceased husband. Mr. Kaiser had previously been married to Ms. Curley. Mass Mutual paid the $1,210,231.35 proceeds of the life insurance policy on Mr. Kaiser's life into the Court Registry and was thereafter dismissed from the action with prejudice.

On October 26, 2007, Ms. Curley and Ms. Kaiser filed cross-motions for summary judgment. The District Court granted summary judgment in favor of Ms. Curley on one issue, denied it on two others, and anticipated further summary judgment briefing at the

close of discovery. Nearly two years later, Ms. Curley and Ms. Kaiser once again filed cross-motions for summary judgment, and the District Court granted summary judgment in Ms. Curley's favor as to all issues. Ms. Kaiser timely appealed both summary judgment orders.

Ms. Kaiser raises multiple issues on appeal concerning her legal entitlement to the proceeds of the life insurance policy. Ms. Kaiser also claims on appeal that, even if Ms. Curley is legally entitled to the proceeds, a constructive trust should be imposed in Ms. Kaiser's favor in order to prevent the unjust enrichment of Ms. Curley.

None of Ms. Kaiser's legal arguments succeeds and she did not properly plead a claim for unjust enrichment. Accordingly, we will affirm.

## I. **BACKGROUND**

Because we write primarily for the benefit of the parties, we recount only the essential facts.

Mr. Kaiser was married to Ms. Curley from 1974 until March 19, 2001, when a judge of the Connecticut Superior Court entered a judgment of dissolution of marriage. They had two children together. On July 30, 2001, Mr. Kaiser married Ms. Kaiser, and in June, 2002, they had a daughter. Three years later, on November 24, 2005, Mr. Kaiser died suddenly from heart failure. At the time of his death, Mr. Kaiser was a resident of Pennsylvania. Ms. Kaiser became the administratrix of his Estate and received 50% of the Estate. The remaining half was divided evenly among his three children, who each received 16.67% of the Estate.

In 1991, as a partner in the New York law firm of Lord Day & Lord Barrett Smith ("Lord Day"), Mr. Kaiser had applied to the Connecticut Mutual Life Insurance Company (later succeeded by Mass Mutual) for a certificate of insurance to be issued in conjunction with the group life insurance plan owned by Lord Day. On this application, Mr. Kaiser's beneficiary designation read "Ellin Kaiser – wife." Mr. Kaiser's coverage began on August 1, 1991, with "Ellin Kaiser, wife of the Insured" listed as beneficiary for the $1,000,000 death benefit. Lord Day paid the premiums for the policy. When, in 1994, Lord Day dissolved and discontinued the group policy, Mr. Kaiser opted to continue his coverage by converting his share of the group policy into an individual policy, for which he would pay the premiums. It is the proceeds of this policy ("the Policy") that have been interpleaded with the court.

Mr. Kaiser also owned three other life insurance contracts at the time of his death. He had a policy with Travelers Insurance Company with a $1,000,000 death benefit and a policy with Prudential Insurance Company with a $1,000,000 death benefit. Ms. Kaiser was the beneficiary of both these policies. The Prudential policy had been purchased shortly before Mr. Kaiser's death and was intended to replace the Policy, which would have lapsed shortly after the date of Mr. Kaiser's death. Mr. Kaiser also had a second policy with Mass Mutual with a $5,000 death benefit.

On January 24, 2002, Mr. Kaiser called Mass Mutual and requested a change of beneficiary designation form for the $5,000 policy. During this conversation, he also discussed the mechanics of changing the beneficiary on the much larger policy. While he

4

completed and returned the form to change the $5,000 policy's beneficiary, and Mass Mutual recorded this change, he never submitted a change of beneficiary form for the Policy. The form that he did return referred to the $5,000 policy by number and not by amount of benefit. Mr. Kaiser also told his financial advisor, for purposes of estate planning, that his wife stood to collect $2 million in life insurance when he died.

After Mr. Kaiser's death, Mass Mutual established a claim for payment of benefits. The claims examiner searched for a change of beneficiary on the Policy, but found none. Mass Mutual did not immediately pay the proceeds of the Policy to Ms. Curley, in part because Ms. Kaiser had made an adverse claim to the proceeds. Mass Mutual therefore filed an interpleader action in the Eastern District of Pennsylvania, naming Ms. Kaiser and Ms. Curley as defendants. After it paid the proceeds of the Policy into the Court Registry, the Court entered an Order dismissing Mass Mutual with prejudice.

Ms. Kaiser and Ms. Curley each filed an initial set of cross-motions for summary judgment. The parties focused on: (1) whether Mr. Kaiser had, in fact, changed the beneficiary on the Policy; (2) whether Ms. Curley had waived her interest in the proceeds of the Policy in the course of her divorce from Mr. Kaiser; and (3) whether a Pennsylvania statute that would have made Ms. Kaiser the beneficiary applied. The District Court granted summary judgment in favor of Ms. Curley on the second issue and denied summary judgment to both parties on the other two issues. Ms. Kaiser sought

reconsideration of the ruling and certification of an interlocutory appeal pursuant to 28 U.S.C. § 1292. The Court denied those requests.

Ms. Curley and Ms. Kaiser filed a second set of cross-motions for summary judgment at the end of discovery. The District Court granted summary judgment in favor of Ms. Curley on the remaining issues. Ms. Kaiser filed a timely notice of appeal, challenging both of the District Court's summary judgment orders.

## II.  JURISDICTION AND STANDARD OF REVIEW

The District Court had jurisdiction over this interpleader action brought in diversity, pursuant to 28 U.S.C. § 1335. We have jurisdiction over the appeal from two summary judgment orders, pursuant to 28 U.S.C. § 1291. *Busch v. Marple Newtown Sch. Dist.*, 567 F.3d 89, 95 n.7 (3d Cir. 2009). We review the District Court's order granting summary judgment de novo. *Azur v. Chase Bank, USA, Nat'l Ass'n*, 601 F.3d 212, 216 (3d Cir. 2010). "To that end, we are required to apply the same test the district court should have utilized initially." *Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd. of Educ.*, 587 F.3d 176, 181 (3d Cir. 2009) (internal quotation marks omitted).

Summary judgment is appropriate "where the pleadings, depositions, answers to interrogatories, admissions, and affidavits show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Azur*, 601 F.3d at 216 (quoting *Nicini v. Morra*, 212 F.3d 798, 805-06 (3d Cir. 2000) (en banc) (citing Fed.

R. Civ. P. 56(c))).[1] "[A]n inference based upon a speculation or conjecture does not create a material factual dispute sufficient to defeat entry of summary judgment." *Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 382 n.12 (3d Cir. 1990).

## III. <u>ANALYSIS</u>

Appellant raises four arguments as to why the District Court erred in granting summary judgment to Ms. Curley. Appellant contends that: (1) Ms. Curley waived her rights to proceeds of Mr. Kaiser's life insurance through the separation agreement executed as part of their divorce; (2) payment of the proceeds is governed by 20 Pa. Cons. Stat. § 6111.2, which makes Ms. Kaiser the beneficiary by operation of law; (3) Mr. Kaiser made a substantial effort to designate Ms. Kaiser as the beneficiary, and therefore she should legally be considered the beneficiary under Connecticut law; and (4) Ms. Curley would be unjustly enriched by the proceeds of the Policy, and thus a constructive trust should be imposed in Ms. Kaiser's favor. We will address these issues in turn.

### A. Waiver by Agreement

As part of their divorce, Mr. Kaiser and Ms. Curley signed a separation agreement that the Connecticut Superior Court incorporated into its judgment of dissolution of

---

[1] Fed. R. Civ. P. 56 was revised in 2010. The standard previously set forth in subsection (c) is now codified as subsection (a). The language of this subsection is unchanged, except for "one word — genuine 'issue' bec[ame] genuine 'dispute.'" Fed. R. Civ. P. 56 advisory committee's note, 2010 amend.

marriage. Ms. Kaiser argues that two of the provisions in this agreement waive any rights to the proceeds of the Policy that Ms. Curley might have. First, the agreement provides that "the Wife," "[e]xcept as herein provided[,]" "has no right, title or interest in any of the bank accounts, money market accounts, deferred compensation (including, but not limited to, pension, profit sharing, 401K or Keogh Plans, or Individual Retirement Accounts), securities, bonds, and/or the like, now in the name of the Husband." (App. at 933-34.) Second, in the "Mutual Releases" section of the agreement, Mr. Kaiser and Ms. Curley each "release[] and discharge[] the other of and from all cause or causes of action, claims, rights, contracts previously executed, or demands whatsoever, in law or in equity, which either of the parties hereto ever had or now has. . . it being the intention of the parties that subsequent to the execution of this Agreement there shall be, as between them, only such rights and obligations as were specifically provided in this Agreement." (App. at 941.)

The District Court, relying on the decision of the Connecticut Superior Court in *Martineau v. Martineau*, CV 9900622095, 200 Conn. Super. LEXIS 1616 (Conn. Super. Ct., June 20, 2000), held that these release provisions were "insufficient as a matter of law to act as a waiver by Ms. Curley of the right to the proceeds." (App. at 8.) The *Martineau* court held that, since the waiver provision in the divorce agreement had not specifically addressed life insurance beneficiary rights, the court would have to inappropriately insert language into that agreement in order to find that the waiver prevented life insurance proceeds from going to the ex-wife, who was the designated

8

beneficiary. The District Court read *Martineau* to require that, as a matter of law, general provisions in a property settlement cannot waive the right to life insurance proceeds.

However, the language of the waiver in *Martineau* was different and narrower than that in Ms. Curley and Mr. Kaiser's agreement. *See id.* at \*1-\*2 ("Each party shall retain all assets now in his or her possession, including pensions, retirement plans, bank accounts, and the like.") While Appellant points to another Connecticut Superior Court case, *Anderson v. Anderson*, 2000 Conn. Super. LEXIS 1868 (Conn. Super. Ct. July 14, 2000), wherein the court determined that the waiver provision in the separation agreement supported its decision to impose a constructive trust removing the life insurance proceeds from the ex-wife, the language in that waiver provision was also distinct from that at issue here. *Id.* at \*9 ("[U]nder paragraph four (4) captioned *Personal Property* she waived any claim she might have whether arising from the marital relationship of the parties or otherwise.") Because neither of these cases concerns identical waiver language, neither dictates the outcome in this case.

The waiver language in the Kaiser-Curleys' separation agreement specifically covers all rights and obligations between the two divorcing parties. The life insurance contract, though, involves the obligation of a third party, Mass Mutual. Further, when the agreement specifically enumerates all of the types of marital assets to which Ms. Curley revokes her claim, life insurance is not listed among them. As a result, the waiver language does not apply to the life insurance contract, and we find that Ms. Curley did not waive her rights to the proceeds of the Policy by signing the separation agreement.

9

**B. Operation of Law**

Effective December 16, 1992, the Pennsylvania Probate, Estates and Fiduciaries Code was amended with the addition of a provision that automatically revokes the designation of an ex-spouse as beneficiary of a life insurance policy, treating that ex-spouse as if she had predeceased the decedent for purposes of settling the estate. *Parsonese v. Midland Nat. Ins. Co.*, 706 A.2d 814, 815 (Pa. 1998). The provision, 20 Pa. Cons. Stat. § 6111.2 ("the Statute"), forms the basis for Appellant's second argument that Ms. Curley is not entitled to the proceeds, as Mr. Kaiser was a resident of Pennsylvania at the time of his death.

This argument must fail. Mr. Kaiser purchased the Policy in 1991, and the Statute became effective the following year. In *Paronese*, the Pennsylvania Supreme Court held that the Statute would violate the contracts clauses of the Pennsylvania and Federal Constitutions, Pa. Const. art. I § 17; U.S. Const. art. I § 10, if it applied retroactively, to contracts entered into before the effective date of the statute. *Parsonese*, 706 A.2d at 819. As a result it "refuse[d] to apply the Statute retroactively despite the intention to establish retroactivity expressed" in the text of the legislative act and limited the Statute to "prospective application." *Id.*

Appellant argues retroactive application is not necessary to find in her favor because a new life insurance contract was formed on two occasions— both after the effective date of the statute—when Lord Day dissolved, rendering the Policy an individual policy and, later, when the Policy was reinstated after Mr. Kaiser briefly let his

10

payments lapse. The District Court properly determined that neither of these scenarios constituted the formation of a new contract. The contract in question was formed in 1991, before the statute went into effect, and the Statute does not apply retroactively. *See id.* Accordingly, it cannot revoke the designation of Ms. Curley as beneficiary.

### C. Substantial Compliance

Appellant's third argument on appeal is that Mr. Kaiser substantially complied with the Policy's terms regarding changing the beneficiary, and that the beneficiary designation has thus been legally changed although he did not strictly comply. Connecticut law finds that the owner of a life insurance policy who has not changed the beneficiary designation according to the policy's strict terms will nonetheless be deemed to have done so if he (1) "intended to change the beneficiary and to designate the new beneficiary; and (2) […] has taken substantial affirmative action to effectuate the change in the beneficiary." *Engelman v. Conn. Gen. Life Ins. Co.*, 690 A.2d 882, 888 (Conn. 1997).

Pennsylvania's standard is slightly higher: it provides that a policyholder will be found to have changed the beneficiary when "the insured has made every reasonable effort under the circumstances to comply" with the provisions of the policy governing change of beneficiary. *Cipriani v. Sun Life Ins. Co. of Am.*, 757 F.2d 78, 81 (3d Cir. 1985). Connecticut law makes explicit that a policyholder who has met this every-reasonable-effort standard will be found to have met the substantial compliance standard. *Engelman*, 690 A.2d at 888 n.11.

11

The District Court found that, regardless of which state's law it applied, Ms. Kaiser's argument here failed. We agree. The District Court held that, although Ms. Kaiser had arguably raised an issue of fact about Mr. Kaiser's intent to change the beneficiary designation, she had not produced evidence that he took any affirmative action to effectuate that change, as required by both Pennsylvania and Connecticut law. The Policy's language made clear that the beneficiary could be changed during the life of the owner with a request in writing, and Ms. Kaiser had presented no evidence that Mr. Kaiser had tried to make such a request.

It would be impossible for a court to find that the evidence Appellant has presented shows a substantial affirmative action by Mr. Kaiser toward changing the beneficiary designation without relying upon "an inference based on speculation or conjecture." *Robertson*, 914 F.2d at 382 n.12. Ms. Kaiser's best pieces of evidence to support the proposition that Mr. Kaiser did take such substantial affirmative actions are (1) the notes of his conversation with a Mass Mutual representative, reflecting that he brought up both policies when he inquired about changing the beneficiary (App. at 687-88); (2) the change of beneficiary form he did submit, identifying the $5,000 policy by policy number and not by amount (App. at 769); (3) the application form for the new Prudential policy listing Karen Kaiser as the beneficiary of the Mass Mutual policy to be replaced (App. at 757); and (4) the Merrill Lynch financial plan, drawn up by the Kaisers' financial advisor, reflecting $2 million in life insurance passing to Ms. Kaiser upon Mr. Kaiser's death (App. at 871.) However, we cannot find, based on this evidence,

12

that Mr. Kaiser took a substantial affirmative action to effectuate the change of beneficiary on the Policy, unless we speculate. Such speculation cannot "create a material factual dispute sufficient to defeat entry of summary judgment." *Id.* As a result, Appellant's argument based on substantial compliance must fail.

### D. Unjust Enrichment

Appellant's final argument is that even if Ms. Kaiser is not legally entitled to the proceeds of the Policy, this Court should award Ms. Kaiser the proceeds in equity, through the imposition of a constructive trust. Under Pennsylvania law, a constructive trust "is an equitable remedy designed to prevent unjust enrichment." *Stauffer v. Stauffer*, 351 A.2d 236, 241 (Pa. 1976). The elements of unjust enrichment are "(1) a benefit conferred on the defendant by the plaintiff; (2) appreciation of such benefit by the defendant; and (3) acceptance and retention of such benefit under circumstances such that it would be inequitable for the defendant to retain the benefit without payment to the plaintiff." *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 273 (3d Cir. 2010) (citing *AmeriPro Search, Inc. v. Fleming Steel Co.*, 787 A.2d 988, 991 (Pa. Super. Ct. 2001)). To prevail, "a claimant must show that the party against whom recovery is sought has received a benefit that "would be unconscionable for her to retain." *Id.* (quotations omitted). There are several grounds from which unjust enrichment can result: breach of a confidential relationship, fraud, duress, undue influence, or mistake. *Denny v. Cavilieri*, 443 A.2d 333 (Pa. Super. Ct. 1982).

At oral argument, when asked where in her pleading she had raised a claim of unjust enrichment, Appellant's counsel asserted that her third cross-claim was the claim for unjust enrichment. The third cross-claim alleges that Mr. Kaiser attempted to designate Ms. Kaiser as the beneficiary and believed that he had done so. It also states that "the beneficiary of the Policy either was changed to Ms. Kaiser, *or should be changed* by plaintiff or by order of this Court to Ms. Kaiser." (App. at 69-70 (emphasis added).) It does not employ the phrase "unjust enrichment" or detail the elements or a claim for unjust enrichment. Instead, Appellant's third cross-claim alleges the elements of Appellant's claim of substantial compliance, as argued during both rounds of summary judgment briefing and in this appeal. As such, no claim for unjust enrichment was pled, and there is no claim for which a constructive trust could serve as a remedy. *See Stauffer*, 351 A.2d at 241 ("[T]he test [for determining whether a constructive trust should be imposed] is whether or not unjust enrichment can thereby be avoided.")

However, even if Appellant had pled a claim for unjust enrichment, that claim would fail. Although Appellant could likely show that a benefit was received and appreciated by Appellee, in order to prevail, Appellant would also need to demonstrate that it would be inequitable for Appellee to retain the proceeds of the Policy. *See EBC, Inc.*, 618 F.3d at 273. "One who seeks to construct a trust bears a heavy burden of proof; the evidence must be clear, direct, precise and convincing." *Mooney v. Greater New Castle Dev. Corp.*, 510 A.2d 344, 347 (Pa. 1986) (internal quotations omitted).

Appellant's argument that it would be inequitable for Appellee to retain the proceeds rests on similar factual predicates as does her argument that she should prevail under the substantial compliance doctrine. Appellant asks us to infer or speculate from statements Mr. Kaiser made to his wife and to his financial advisor that Mr. Kaiser made a mistake when he did not actually designate Appellant as beneficiary. As we discussed above, such inference or speculation can never "create a material factual dispute sufficient to defeat entry of summary judgment," *Robertson*, 914 F.2d at 382 n.12, and it is not "clear, direct, precise and convincing" evidence. *Mooney*, 510 A.2d at 347.

Because Appellant cannot prevail on her claim for unjust enrichment, the remedy of constructive trust is not available to her.

## IV. **CONCLUSION**

For the reasons set forth above, we will affirm the order of the District Court.

SLOVITER, *Circuit Judge*, dissenting.

The appeal before us starkly presents the difference between law and equity. The Majority hews to a strict construction of law. I dissent because I believe all the circumstances compel application of equity.

Equity originated as a means of allowing judicial decision-making based on fairness, compassion or flexibility where an adequate remedy at law was unavailable. DAN B. DOBBS, DOBBS LAW OF REMEDIES § 2.1(3), at 63 (2d ed. 1993). It therefore requires outcomes where "commonly accepted feelings of fairness demand more flexibility than pure, straight-faced 'law' would allow." *Id.* For example, courts have long recognized that "correct[ing] mistakes is one of the cardinal attributes of equity." *Smith v. Capital Bank & Trust Co.*, 191 A. 124, 125 (Pa. 1937). A constructive trust, moreover, "'is the formula through which the conscience of equity finds expression.'" *Chambers v. Chambers*, 176 A.2d 673, 675 (Pa. 1962) (quoting *Beatty v. Guggenheim Exploration Co.*, 122 N.E. 378, 380 (N.Y. 1919)).

A constructive trust arises where "a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it." *Denny v. Cavalieri*, 443 A.2d 333, 335 (Pa. Super. Ct. 1982). There is no "rigid standard" for determining whether the facts of a particular case require the imposition of a constructive trust. *Stauffer v. Stauffer*, 351 A.2d 236, 241 (Pa. 1976); *see also Chambers*, 176 A.2d at 675 (recognizing that a court is bound by "no unyielding formula" in decreeing a constructive trust (citation omitted)). Instead, "the

1

test is whether or not unjust enrichment can thereby be avoided." *Stauffer*, 351 A.2d at 241.

As the Majority acknowledges, unjust enrichment may result, *inter alia*, from mistake, *Denny*, 443 A.2d at 335, and requires "clear, direct, precise and convincing" evidence. *Roberson v. Davis*, 580 A.2d 39, 41 (Pa. Super. Ct. 1990) (citations omitted). However, that standard does not—as the Majority seems to suggest—require conclusive evidence, based on Mr. Kaiser's statements alone, that he mistakenly failed to designate Mrs. Kaiser as the Policy beneficiary on the life insurance policy with Massachusetts Mutual Insurance Co. ("Mass. Mutual"). Rather, we may impose a constructive trust if the totality of the circumstances—proven by clear and convincing evidence— demonstrates that a mistake occurred and unjust enrichment would thereby result. *Cf. Denny*, 443 A.2d at 335 (concluding that a finding of fraud requiring the imposition of a constructive trust may be inferred from the totality of the circumstances, including the subsequent conduct of the transacting parties); *Stauffer*, 351 A.2d at 244 (same).

The Majority determines that Mrs. Kaiser is not entitled to a constructive trust because she neither pled the elements of an unjust enrichment claim nor employed the phrase "unjust enrichment" in her cross-claim. *See* Majority Op. at Section III-D. A constructive trust, however, is merely a form of equitable relief, *see Makozy v. Makozy*, 874 A.2d 1160, 1168 (Pa. Super. Ct. 2005), which Mrs. Kaiser specifically requested in her third and fourth cross-claims. *See* App. at 69 (stating that "the beneficiary of the Policy either was changed to Mrs. Kaiser, or should be changed . . . by order of th[e] Court"). Moreover, this court has recognized that it may "award[] any relief appropriate

2

under the circumstances . . . even [if] the complaint did not request [such] relief." *Kahan v. Rosenstiel*, 424 F.2d 161, 174 (3d Cir. 1970); *see also* Fed. R. Civ. Pro. 54(c) ("[A] final judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings."). Indeed, so long as a cause of action for equitable relief is "in fact inherent in the [pleadings]," such relief may be granted.[1] *Kahan*, 424 F.2d at 174.

In her third cross-claim, Mrs. Kaiser sets forth sufficient facts to support the court's imposition of a constructive trust. Specifically, she alleged that "[a]t all times subsequent to his marriage to Mrs. Kaiser, Mr. Kaiser intended to provide financial protection to his wife, especially after the birth of their daughter." App. at 69. Additionally, Mrs. Kaiser alleged that Mr. Kaiser attempted to change the Policy beneficiary to Mrs. Kaiser, believed that he had done so, and even included the Policy in a list of assets that would be available to Mrs. Kaiser after his death. Those allegations sufficiently demonstrate that Mrs. Curley would be unjustly enriched by her receipt of the

---

[1] At oral argument, counsel for Mrs. Curley emphasized that Mrs. Kaiser did not specifically request the imposition of a constructive trust based on unjust enrichment until the "second round" of summary judgment briefing and stated that counsel for Mrs. Curley perceived the request as a "catch all," essentially arguing that the court should exercise its discretionary powers to grant relief despite a valid beneficiary designation. Oral Arg. at 21:00. That understanding, however, was also supported by Mrs. Kaiser's third and fourth cross-claim, asking the court to change the policy beneficiary irrespective of the current designation. Therefore, there was no unfair surprise in this case. *See Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 499-500 n.1 (3d Cir. 1997) (stating that "a complaint must provide a defendant with fair notice of what the plaintiff's claim is and the grounds upon which it rests" (internal quotation marks and citation omitted)).

3

Policy funds because she would realize a benefit originally intended for Mrs. Kaiser, and-—given Mr. Kaiser's mistake—her retention of those benefits would be inequitable.[2]

Beyond the sufficiency of the pleadings, we should impose a constructive trust in Mrs. Kaiser's favor because the totality of the circumstances, including the relationships between Mr. Kaiser, Mrs. Kaiser and Mrs. Curley, demonstrate that Mrs. Curley's receipt of the Policy benefits would lead to unjust enrichment. At the time of his death, Mr. Kaiser had been separated from his former wife, Mrs. Curley, for four years, and their two children were legal adults. Not only was Mr. Kaiser remarried, but Mrs. Curley had also remarried and inherited significant sums of money from the ex-couple's divorce agreement and her parents. In fact, Mr. Kaiser was engaged in acrimonious litigation with Mrs. Curley around the time of his death.

On the other hand, the record shows that Mr. Kaiser maintained a close and interdependent marital relationship with Mrs. Kaiser. Unlike his two children with Mrs. Curley, who were in their twenties, Mr. Kaiser's child with his wife was only three years old at the time of his death. Further, Mrs. Kaiser was unemployed and dependant on financial support provided by the decedent.[3]

---

[2] As the Majority notes, the central components of unjust enrichment are: "(1) a benefit conferred on the defendant by the plaintiff; (2) appreciation of such benefit by the defendant; and (3) acceptance and retention of such benefit under circumstances such that it would be inequitable for the defendant to retain the benefit without payment to the plaintiff." Majority Op. at Section III-D (citing *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 273 (3d Cir. 2010)).

[3] There is no basis to dispute whether these facts have been proven by clear and convincing evidence, as they are established by Mrs. Kaiser's undisputed testimony. The proper question is whether the facts, combined with other uncontroverted evidence in the

A finding of mistake is further bolstered by evidence demonstrating that Mr. Kaiser thought that he had in fact changed the Policy beneficiary to Mrs. Kaiser. As the Majority acknowledges, Mr. Kaiser filed a "Change of Beneficiary" form in favor of Mrs. Kaiser on a $5,000 life insurance policy with Mass. Mutual. That form, however, provided only a policy number and did not indicate the value of the underlying policy. Demonstrating his belief that he actually changed the Policy beneficiary to Mrs. Kaiser, Mr. Kaiser subsequently informed his financial advisor that Mrs. Kaiser would receive $2,000,000 dollars in life insurance proceeds after his death.[4] Mr. Kaiser likewise told his wife that he had designated her as the Policy beneficiary.[5] Thus, in applying for a replacement policy with Prudential Insurance Co., Mr. Kaiser listed Mrs. Kaiser as the beneficiary on the Mass. Mutual policy. Furthermore, despite knowing about the Policy

---

record, allow the court to infer that Mr. Kaiser's failure to designate Mrs. Kaiser as the Policy beneficiary was a mistake.

[4] At the time Mr. Kaiser consulted with his financial advisor, Mr. Kaiser owned three life insurance policies: (1) the $5,000 Mass. Mutual insurance policy; (2) the $1,000,000 Mass. Mutual insurance policy; and (3) a $1,000,000 policy with Travelers Insurance Company. Thus, the proceeds he mentioned to his financial advisor necessarily included the $1,000,000 Mass. Mutual insurance policy.

[5] Appellee contends that this evidence constitutes inadmissible hearsay. However, such out-of-court statements are admissible because Mrs. Kaiser is not offering them for the truth of the matter asserted but as circumstantial proof of Mr. Kaiser's intent to change the Policy beneficiary. *See Ryder v. Westinghouse Elec. Corp.*, 128 F.3d 128, 134 (3d Cir. 1997).

and Mr. Kaiser's death, Mrs. Curley did not make a claim to the Policy benefits until Mass. Mutual informed her that she was still named as the beneficiary.[6]

Finally and of significance, Pennsylvania policy supports application of equity here. A Pennsylvania statute, 20 Pa. Const. Stat. Section 6111.2 ("Section 6111.2"), enacted in 1992 provides, in relevant part:

> [I]f an individual . . . designates [his or her] spouse as beneficiary of the individual's life insurance policy . . . and . . . at the time of the individual's death is divorced from the spouse[,] . . . [a]ny designation . . . in favor of the individual's . . . former spouse that was revocable by the individual at the individual's death shall become ineffective for all purposes and shall be construed as if the . . . former spouse had predeceased the individual, unless it appears the designation was intended to survive the divorce.

This legislation protects "divorced owners of life insurance policies, and of those, only ones who inadvertently neglect to revoke pre-divorce designations of their spouses as beneficiaries." *Parsonese v. Midland Nat'l Ins. Co.*, 706 A.2d 814, 818 (Pa. 1998). Mrs. Curley has offered no evidence that suggests Mr. Kaiser intentionally retained his former (pre-divorce) designation of Mrs. Curley as the beneficiary of the policy. Because the totality of the circumstances demonstrates that Mr. Kaiser, by his inattention, mistakenly failed to designate his wife as the policy beneficiary, Mrs. Kaiser is precisely the type of individual the Pennsylvania Legislature has set out to protect. Moreover, "the generally understood purpose of life insurance" is to compensate for "loss to a party having an expectation of pecuniary or personal benefit in the continued life of the deceased,"

---

[6] The record also shows that Mr. Kaiser experienced significant disruption during his final years, including his divorce, litigation with his ex-wife, the formation and failure of a new law firm, and the death of his mother. Such upheaval lends further support to the conclusion that Mr. Kaiser—through inattentiveness—mistakenly failed to designate Mrs. Kaiser as the Policy beneficiary.

*Spinner v. Fulton*, 777 F. Supp. 398, 404 (M.D. Pa. 1991), *aff'd sub nom.*, *Spinner v. Hartford Accident & Indem. Co.*, 947 F.2d 937 (3d Cir. 1991), a position held by Mrs. Kaiser rather than Mrs. Curley. Overall, equitable considerations support this court's imposition of a constructive trust in favor of Mrs. Kaiser.

For the foregoing reasons, I respectfully dissent.