**SCHOOL SECURITY SERVICES, INC., a Pennsylvania Business Corporation, Appellant**

v.

**DUQUESNE CITY SCHOOL DISTRICT, a/k/a Duquesne School District, a municipal corporation and political subdivision of the Commonwealth of Pennsylvania, and Nick J. Staresinic, individually, and as Chairman, Board of Control, Duquesne City School District, a/k/a Duquesne School District, a municipal corporation and political subdivision of the Commonwealth of the Commonwealth of Pennsylvania.**

Commonwealth Court of Pennsylvania.

Argued May 4, 2004.
Decided May 26, 2004.
Reargument Denied July 15, 2004.

---

George S. Gobel, McKeesport, for appellant.

Todd P. Prugar, Pittsburgh, for appellees.

BEFORE: SMITH–RIBNER, Judge, FRIEDMAN, Judge, and FLAHERTY, Senior Judge.

OPINION BY Judge FRIEDMAN.

School Security Services, Inc., a Pennsylvania Business Corporation, (Security Services) appeals from the June 5, 2003, order of the Court of Common Pleas of Allegheny County (trial court), which *sua sponte* granted judgment on the pleadings to Duquesne City School District, a/k/a Duquesne School District, a municipal corporation and political subdivision of the Commonwealth of Pennsylvania (School District), and Nick J. Staresinic, individually, and as Chairman, Board of Control, Duquesne City School District, a/k/a Duquesne School District, a municipal corporation and political subdivision of the Commonwealth of Pennsylvania (Staresinic) (collectively, the defendants). We reverse and remand.

On September 27, 1999, Security Services entered into a three-year contract with the School District for security services. (Complaint, ¶ 5; R.R. at 6.) However, by letter dated August 8, 2001, Staresinic informed Security Services that the contract was terminated and that the School District had decided to execute a security services contract with Capital Asset Protection, Inc., for the 2001–2002 school year. (Complaint, ¶¶ 8, 10; R.R. at 7.) The letter states, "Our decision in this matter was primarily based on improved and expanded services at an affordable cost." (R.R. at 14.)

Security Services filed a two-count complaint with the trial court. In Count I, Security Services alleged that the School District breached the contract because, inasmuch as Security Services provided the School District with satisfactory security services, there were no grounds for cancellation. Security Services sought in excess of $25,000 in damages. (Complaint, ¶ 11; R.R. at 7.) In Count II, Security Services alleged that Staresinic tortiously interfered with the contract, for which Security Services sought in excess of $25,000 in damages. (Complaint, ¶ 14; R.R. at 8–9.) In both Counts I and II, Security Services also sought in excess of $25,000 in damages for injury to reputation. (R.R. at 8, 10.)

The defendants filed an answer with new matter. With respect to Count I, the defendants denied that Security Services had provided satisfactory security services,

stating that "it was the unsatisfactory nature of the services as well as additional considerations that formed the basis [for] ... terminating the contract...." (Answer, ¶ 11; R.R. at 20.) With respect to Count II, the defendants averred that Staresinic simply acted pursuant to authority granted to him by section 693 of the Public School Code of 1949 (Code),[1] which describes the powers that a special board of control has in operating a school district in financial distress. (Answer, ¶ 14; New Matter, ¶ 19.) In their new matter, the defendants reiterated their assertion that Security Services failed to provide satisfactory services and that Staresinic acted pursuant to section 693 of the Code. (New Matter, ¶¶ 19–20.)

In its answer to new matter, Security Services denied that it failed to provide satisfactory security services. With respect to section 693 of the Code, Security Services asserted that, under section 693, Staresinic had only sixty days after taking control of the School District to cancel the contract and that the cancellation occurred more than sixty days after the Board took control of the School District. Moreover, Security Services asserted that Staresinic could only cancel the contract "if such cancellation ... of contract will effect needed economies in the operation of the district's schools." 24 P.S. § 6–693(1). Security Services maintained that the cancellation of the contract did not improve the financial status of the School District. (R.R. at 25–26.)

The defendants filed several motions in limine. In one of the motions, the defendants argued that, because the contract was cancelled pursuant to section 693, any evidence presented to show that Security Services provided satisfactory security ser-

vices would be irrelevant. During argument on the matter, the trial court asked the defendants why they had not filed a motion for summary judgment instead of a motion in limine. (R.R. at 133.) The defendants replied that, under section 693, the contract could be cancelled only if the cancellation would improve the finances of the School District, which is a disputed question of fact. (R.R. at 133, 136–37.) The trial court then asked whether Security Services had standing to question whether the cancellation improved the finances of the School District. (R.R. at 137.) The defendants did not make a substantive response to the trial court's inquiry. *Id.*

During its argument, Security Services stated that, if the finances of the School District were the ultimate concern in canceling the contract, the School District could have "cut back the number of hours" under the contract, which set an hourly rate of $10.00. (R.R. at 164.) Moreover, because the new contract provides for an hourly rate of $11.75 for non-supervisory persons and $12.75 for supervisory persons, a higher rate than that paid to Security Services, it does not appear that the finances of the School District were improved by the contract cancellation. (R.R. at 165.) However, the trial court stated, "I don't think that [Security Services] has standing to raise any issue with regard to needed economies." (R.R. at 175.) Shortly thereafter, the defendants moved to convert the motion in limine to a motion for judgment on the pleadings. (R.R. at 182.) The trial court granted the motion and entered judgment on the pleadings. (R.R. at 182–87.) Security Services now

---

1. Act of March 10, 1949, P.L. 30, *added by* the Act of December 15, 1959, P.L. 1842, 24 P.S. § 6–693.

appeals to this court.[2]

## I. Full and Fair Opportunity

■ Initially, Security Services argues that the trial court could not properly convert the motion in limine to a motion for judgment on the pleadings without first providing a full and fair opportunity for Security Services to brief and argue the relevant legal issues. We agree. In *Cagnoli v. Bonnell*, 531 Pa. 199, 203, 611 A.2d 1194, 1196 (1992), our supreme court stated that a party opposing a motion for judgment on the pleadings must have a full and fair opportunity to argue against the motion.

Here, the defendants filed a motion in limine which sought to exclude evidence relating to whether Security Services satisfactorily performed its duties under the contract. The motion asserted that such evidence was irrelevant as to whether the contract was properly cancelled under section 693 of the Code. (R.R. at 32–33.) However, during oral argument, the defendants acknowledged that section 693 authorizes contract cancellations only if they improve the financial condition of the School District, a disputed question of fact precluding summary judgment. The trial court then *sua sponte* raised the question of whether Security Services had standing to challenge the economic impact of a section 693 contract cancellation. *Based on the standing issue*, the trial court allowed the defendants to convert the motion in limine into a motion for judgment on the pleadings and then granted the motion.

Because the question of standing, the dispositive issue, was *not* part of the motion in limine but, rather, was raised by the trial court *sua sponte* during oral argument, Security Services did *not* have a full and fair opportunity to brief and argue that issue. Therefore, the trial court erred in granting judgment on the pleadings.

## II. Section 693

■ Security Services next argues that judgment on the pleadings was not proper because whether the defendants cancelled the contract to improve the School District's financial condition is a disputed question of fact. We agree. Section 693 provides, in pertinent part, as follows:

> When the special board of control assumes control of a distressed school district, it shall have power and is hereby authorized to exercise all the rights, powers, privileges, prerogatives and duties imposed or conferred by law on the board of school directors of the distressed district, and the board of school directors shall have no power to act without the approval of the special board of control. In addition thereto, the special board of control shall have power to require the board of directors within sixty (60) days to revise the district's budget *for the purpose of effecting such economies as it deems necessary to improve the district's financial condition. To this end* the special board of control may require the board:

---

**2.** In an appeal from a decision granting judgment on the pleadings, our scope of review is limited to determining whether the trial court committed an error of law or abused its discretion. *Giacomucci v. Southeast Delco School District*, 742 A.2d 1165 (Pa.Cmwlth. 1999). When reviewing the trial court's decision, we may consider only the pleadings, accepting as true all well pled statements of fact, admissions and any documents properly attached to the pleadings presented by the party against whom the motion is filed. *Id.* Further, we may sustain the trial court's grant of judgment on the pleadings only where the movant's right to succeed is certain and the case is so free from doubt that trial would be a fruitless exercise. *Id.*

(1) To *cancel* or to renegotiate *any contract* other than teachers' contracts to which the board or the school district is a party, *if such cancellation* or renegotiation of contract *will effect needed economies in the operation of the district's schools.*

24 P.S. § 6–693 (emphasis added).

Here, Staresinic cancelled the contract with Security Services because the School District was not satisfied with the services provided under the contract. As stated in the contract termination letter, the School District desired "improved and expanded services at an affordable cost." The letter did *not* mention the School District's need to improve its financial condition or that the contract was being cancelled pursuant to section 693. Indeed, the new contract allegedly set a higher hourly rate for security services than the previous contract. Because there is a disputed question of fact as to whether Staresinic actually cancelled the contract under section 693 to improve the School District's financial condition, the trial court erred in granting judgment on the pleadings.

### III. Standing

■ Finally, Security Services argues that the trial court erred in concluding that it lacked standing to challenge the cancellation of the contract on grounds that it did not improve the School District's finances. We agree.

■ The purpose of the requirement of standing is to protect against improper plaintiffs. *Application of Biester,* 487 Pa. 438, 409 A.2d 848 (1979). To meet the standing requirement, a plaintiff must allege and prove an interest in the outcome of the suit which surpasses the common interest of all citizens in procuring obedience to the law. *Id.* To surpass the common interest, the plaintiff's interest must be substantial, direct and immediate. *Id.*

(citing *Wm. Penn Parking Garage, Inc. v. City of Pittsburgh,* 464 Pa. 168, 346 A.2d 269 (1975)).

■ The requirement of a "substantial" interest simply means that there must be some discernible adverse effect to some interest other than the abstract interest of all citizens in having others comply with the law. *Wm. Penn Parking Garage.* The requirement that an interest be "direct" simply means that the person claiming to be aggrieved must show causation of the harm to his interest by the matter of which he complains. *Id.* The requirement of an "immediate" interest means that there must be a sufficiently close causal connection between the challenged action and the asserted injury. *Id.*

Here, there can be no question that Security Services has a substantial interest in the outcome of this lawsuit because the cancellation of the security services contract had a discernible adverse effect on the contractual rights of Security Services. Moreover, Security Services has a direct interest in the outcome of this lawsuit because the contract cancellation caused Security Services' loss of contractual rights. Finally, Security Services has an immediate interest in the outcome of its lawsuit because, inasmuch as the contract cancellation and the loss of contractual rights are inextricably linked, there is a sufficiently close causal connection between the challenged action and the asserted injury.

The defendants suggest that *no one* can challenge a control board's decision as to whether a contract must be cancelled to improve a school district's financial condition. In their brief, they state:

Allowing various parties to challenge a board of control's determination, that a particular decision or action would improve a school district's financial condition, would result in a hopeless legal

morass and would thwart the purpose for appointing a board of control. A board of control will not be able to reestablish a sound financial structure if each action or decision by the board of control could be subjected to a lawsuit claiming that the decision or action was not actually necessary to improve the district's financial condition. Interpreting § 6–693 in the manner advocated by [Security Services] would effectively make the courts, and not boards of control, the operators of distressed school districts.

(Defendants' brief at 18.) For the following reasons, we reject this argument.

There exists a constitutional prohibition against the impairment of contracts, *see Parsonese v. Midland National Insurance Company*, 550 Pa. 423, 706 A.2d 814 (1998); *Foster v. Mutual Fire, Marine and Inland Insurance Company*, 531 Pa. 598, 614 A.2d 1086 (1992), *cert. denied sub nom. Allstate Insurance Company v. Maleski*, 506 U.S. 1080, 113 S.Ct. 1047, 122 L.Ed.2d 356 (1993), and *Republic Insurance Group v. Maleski*, 506 U.S. 1087, 113 S.Ct. 1066, 122 L.Ed.2d 371 (1993), and section 693 cannot be interpreted or applied in a manner that violates this constitutional prohibition. To the contrary, we presume that, in enacting section 693, the legislature did not intend to violate the Constitution of the United States or the Pennsylvania Constitution. Section 1922(3) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1922(3).

■ There is a three-part test for determining whether a state law has impaired a contractual right.

The threshold inquiry is to determine [1] whether the state statute in reality has operated to substantially impair a contractual relationship. Should it be determined that a substantial impairment has occurred, [2] the state must set forth

a legitimate and significant public purpose. Once that purpose is identified, the final inquiry concerns [3] whether the adjustment of contractual rights is reasonable and of a nature appropriate to the public purpose justifying the legislation's adoption. . . .

*Foster*, 531 Pa. at 615 n. 4, 614 A.2d at 1094–95 n. 4 (citations omitted).

First, assuming that Staresinic acted pursuant to section 693 here, it is obvious that his cancellation of the security services contract caused substantial impairment to the contractual relationship between the School District and Security Services. Second, the stated purpose of the statute is to improve the financial condition of a financially distressed school district. Third, the cancellation of the contract here would not be reasonable or appropriate to achieving this public purpose if the evidence were to show that the contract cancellation did *not* improve the financial condition of the School District.

In other words, if we were to accept the School District's position and give absolute and unfettered discretion to boards of control to cancel contracts, whether or not such action improves the financial condition of the school districts, then the provision would allow boards of control to violate the constitutional prohibition against the impairment of contracts with impunity. Therefore, because we cannot permit such a result, we must interpret section 693 as allowing aggrieved parties to challenge whether the cancellation of a contract improved the financial condition of a school district.

Moreover, we are not persuaded by the defendants' argument that this conclusion will result in a hopeless legal morass. If a board of control cancels a contract under section 693, the board of control should be able to explain in its termination letter

how the cancellation of the contract would improve the financial condition of the school district. If the board cannot provide such an explanation, then the contract should not be cancelled. In this case, Staresinic offered no such explanation; indeed, he did not even indicate in his termination letter that the contract was being cancelled to improve the School District's financial condition. Staresinic stated only that he cancelled the contract to improve and expand security services.

Accordingly, we reverse the grant of judgment on the pleadings and remand for further proceedings.

### ORDER

AND NOW, this 26th day of May, 2004, the order of the Court of Common Pleas of Allegheny County (trial court), dated June 5, 2003, is hereby reversed, and this case is remanded to the trial court for further proceedings consistent with the foregoing opinion.

Jurisdiction relinquished.