IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Muhlenberg School District,      :
                         :
           Appellant    :
                         :
        v.                : No. 55 C.D. 2019
                         : Submitted: November 14, 2019
Gordon H. Baver, Inc.        :


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
                 HONORABLE MICHAEL H. WOJCIK, Judge
                 HONORABLE CHRISTINE FIZZANO CANNON, Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY JUDGE WOJCIK                             FILED: December 4, 2019

       Muhlenberg School District (School District) appeals the orders of the Berks County Court of Common Pleas (trial court) granting Gordon H. Baver, Inc.'s (Contractor) motions *in limine* precluding the School District from: (1) presenting a claim or seeking damages for cracks and displacement in the floor slab of classrooms in the E-Block addition to Muhlenberg Middle School (Middle School); (2) presenting the testimony of employees of Earth Engineering, Inc. (Expert Engineer) regarding the purported improper compaction of fill material underneath the floor slabs in the E-Block and C-Block additions to the Middle School; and (3) presenting testimony of John R. Hill (Expert Architect) regarding the cause of the floor slab settlement and cracking in the additions to the Middle School. We quash the appeal.

       The facts as alleged in a complaint that the School District filed on June 15, 2017, are as follows. *See* Reproduced Record (R.R.) at 1a-57a. On

February 4, 2009, the School District and Contractor entered into a contract for the construction of the C-Block and E-Block additions to the Middle School. Contractor was the prime contractor for the project which included site work involving excavation and backfilling for the buildings. Contractor was also responsible for the installation of subgrade fill material and reinforced floor slabs for the buildings.

The contract between the School District and the project's architect, as well as the architect's project manual, required the School District to hire a geotechnical engineer to perform tests and inspections of the site work, including the excavation and backfilling for the buildings. Schuylkill Valley Engineering, Inc. (SVEI) was hired as the geotechnical engineer. SVEI was to inspect and test the subgrades and each fill or backfill layer. Contractor was only allowed to proceed with its site work after SVEI's test results for the previously completed work met the contract requirements. SVEI approved Contractor's work for excavating and backfilling for the slabs in the C-Block addition.

Between 2009 and 2015, there were no settlement issues with respect to the floor slabs in the additions. However, in May 2015, six years after the work was performed, the School District discovered that the floor slabs in several C-Block classrooms had settled and cracked and had become a safety hazard. The School District hired Expert Engineer to conduct diagnostic testing, which included geotechnical field testing. Based on its testing, Expert Engineer concluded that the settlement was the result of loose fill materials underneath the floor slabs.

Likewise, in July 2015, the School District discovered that the floor slabs in a number of classrooms in the E-Block addition had also settled and

2

cracked and had become a safety hazard. Expert Engineer performed testing and concluded that the settlement and cracking of the floor slabs was caused by the improper use of fill material, but that settlement was "within tolerable limits of normal settlement." R.R. at 778a.

In August 2015, a rupture in the cast iron sanitary sewer line was discovered in the school parking lot. The School District asserted that Contractor broke the line during construction in 2009, and improperly repaired it by using PVC pipe and rubber couplings that were the wrong size.

On June 15, 2017, the School District then filed the instant four-count complaint against Contractor alleging negligence, breach of contract, breach of implied warranty of workmanship, and unjust enrichment. On March 12, 2018, the trial court entered an order directing that all discovery be completed within 120 days and all dispositive motions be filed within 30 days after the close of discovery; a pretrial settlement conference was scheduled for August 17, 2018. Following the conference, trial was scheduled for January 8, 2019.

During discovery, the School District responded to Contractor's Supplemental Expert Witness Interrogatories identifying Expert Engineer and Expert Architect as expert witnesses. R.R. at 712a-716.8a. Expert Engineer produced two reports following geotechnical and laboratory testing and review of the plans and drawings to determine the nature and extent of the settlement and cracking floor slabs. *See id.* at 755a-771a, 773a-795a. In both reports, Expert Engineer stated that "[a]t the time of report preparation, daily field inspection reports documenting the excavation of foundations, concrete placement for foundations, backfill placement and placement of floor slab components were not provided[.]" *Id.* at 756a, 774a. With respect to the C-Block addition, Expert

3

Engineer found that "[b]ased on these visual observations and the results of the investigation, the slab distress and settlements noted herein are believed to be due to the presence of the loose existing FILL materials." *Id.* at 760a. However, with respect to the E-Block addition, Expert Engineer found that "[b]ased on these visual observations and the results of the investigation, the slab distress and settlements noted herein are believed to be within the tolerable limits of normal settlement," but "recommend[ed] monitoring the slab for the potential of future settlements, due to the presence of the loose existing FILL materials." *Id.* at 778a.

On November 19, 2018, Contractor filed three motions *in limine* to preclude: (1) representatives of Expert Engineer from testifying regarding the alleged improper compaction of the fill materials; (2) Expert Architect from testifying regarding the cause of the floor slab settlement or cracking in the additions; and (3) the School District from seeking damages at trial for the alleged settlement and cracking of the E-Block floor slab. *See* R.R. at 738a-797a, 798a-875a, 876a-970a. On December 19, 2018, the School District filed responses opposing each of the motions. *Id.* at 1567a-2259a.

Following hearing, on December 21, 2018, the trial court issued three orders granting the three motions *in limine*. R.R. at 2260a-2262a. In its Pa. R.A.P. 1925(a) Opinion filed in support of the orders, the trial court explained that it granted the first motion *in limine*, precluding Expert Engineer's testimony regarding the purported improper compaction of the fill materials, for the following reasons:

> [Expert Engineer] notes in both reports that "at the time of report preparation, daily field inspection reports documenting the excavation of foundations, concrete placement for foundations, backfill placement and placement of floor slab components were not

4

provided[.]" There is also no indication in either report that [Expert Engineer] reviewed the project manual or specifications, which set forth the soil and compaction requirements, in preparing [its] reports. [Expert Engineer] does not opine in either report that the fill material was inadequately compacted during the original construction. In [the School District's] Supplemental Answers to [Contractor's] Expert Witness Interrogatories, [the School District] indicated that [Expert Engineer] would testify regarding the inadequacy of the compaction fill material and the cause of the cracking and settling of the floor slabs, an opinion not in any of the reports. In order to render an opinion regarding the proper compaction of the fill materials, [Expert Engineer] would need to know what the contract specified and what work was done. [Expert Engineer] rendered reports without this information, and its representatives were to testify as to the cause of the cracking and settling, which was outside the scope of its report; therefore, this court precluded such testimony.

\* \* \*

[Expert Engineer] based its opinion on faulty and incomplete information and, thus, was unable to render a meaningful opinion on the issue of [Contractor's] negligence. Expert testimony becomes necessary when the subject matter of the inquiry is one involving special skills and training not common to the ordinary layperson. Laypersons do not have training in compaction of material for floors during construction. An expert was needed in the instant case to explain the problem and to express an opinion that [Contractor] was responsible for the poor compaction. [Expert Engineer] could not render this opinion because it did not have sufficient information about the project. A jury cannot simply guess that [Contractor] was the cause of the damages because it is the sole defendant. A jury needs sufficient facts, rather than speculation, on which to base its decision.

Trial Court 3/8/19 Opinion at 8-9, 10 (citation omitted).

5

With respect to the second motion *in limine*, precluding Expert Architect's testimony regarding the cause of the floor slab settlement or cracking in the additions, the trial court explained that it granted the motion for the following reasons:

> [Expert Architect] is a licensed architect. [He] was to testify that, based upon the reports of [Expert Engineer], the cause of the settling and cracking in the floors of the School was the inadequate compaction of the fill material below the floor slabs and not due to other causes, such as a sinkhole. [He] did not identify any experience in geotechnical engineering, civil engineering, geology, geological surveying, or environmental planning. [The School District's] corporate designee [] testified in his deposition that during the project, it was important that a geotechnical engineer was present during the earth work to insure that the work methods were executed properly. The project's specifications required that geotechnical engineering agency perform tests and inspections of the earthwork that had been performed. [Expert Architect] did not conduct any independent testing or investigation. An expert may not simply repeat another expert's opinion without bringing in his own expertise. Therefore, this court did not permit [Expert Architect] to offer any testimony regarding the cause of the floor slab settlements or cracking because he would have just regurgitated the information from [Expert Engineer's] report.

*Id.* at 7-8 (citation omitted).

Finally, with respect to the third motion *in limine*, precluding the School District from seeking damages for the alleged settlement and cracking of the E-Block floor slab, the trial court explained that it granted the motion for the following reasons:

> This court prohibited damages testimony for E-Block because [the School District's] own expert [] concluded that "the slab distress and settlements noted"

6

in the report "are believed to be within the tolerable limits of normal settlement." Presently, there can be no negligence found because there are no damages. [Expert Engineer] recommended that the slab be monitored for the potential of future settlements due to the presence of the loose existing fill materials; however, such damages are purely speculative. A jury may not award damages on the basis of speculation and conjecture. Slab E was finished for at least five years, and there is no evidence of negligence at this time.

*Id.* at 7 (citation omitted). Following argument, on January 7, 2019, the trial court denied the School District's motion to reconsider its orders granting Contractor's motions *in limine*.

On January 8, 2019, the day set for trial, the School District and Contractor executed the following Settlement Stipulation:

> 1. The parties have agreed that the claims set forth in [the School District's] Complaint regarding the damaged sewer pipe (the "Sewer Pipe Claims") are settled upon the payment of the sum of $19,262.00 by [Contractor] to [the School District], and pursuant to a release agreement to be executed by representatives of [the School District] and [Contractor].
>
> 2. The parties agree that the [trial] court's orders of December 21, 2018 [granting Contractor's motions *in limine*] are dispositive of issues set forth in [the School District's] Complaint regarding the cracked and damaged floors in C-Block and E-Block of the Muhlenberg Middle School (the "Floor Claims").
>
> 3. The parties agree that with the settlement of the Sewer Pipe Claims all issues in this action have been adjudicated by the [trial] court and the orders regarding the Floor Claims entered on December 21, 2018 are ripe for appeal.

7

R.R. at 2533a-2534a. The trial court approved the Settlement Stipulation and entered it as an order of that court. *Id.* at 2534a. The School District then filed this appeal.[1]

As a preliminary matter, we note that on February 22, 2019, this Court issued the following order in this case:

> [I]t appears that [the School District] seeks review of the December 21, 2018 orders of the [trial court] that granted [Contractor's] motions *in limine* precluding (1) testimony related to the cause of floor slab settlement or cracking and allegedly improper compaction of fill materials and (2) [the School District] from seeking damages for alleged settlement and cracking of E Block.
>
> Because [the School District] seeks review of a non-final order, the parties shall address the appealability of the December 21, 2018 orders in their principal briefs on the merits. *See* Pa. R.A.P. 311, 313, 341.

Commonwealth Court 2/22/19 Order.[2]

"[T]he appealability of an order is a question of jurisdiction and may be raised [by this Court] *sua sponte*," and an order granting a motion *in limine* is, generally speaking, not a final appealable order. *Kovalchick v. B.J.'s Wholesale Club*, 774 A.2d 776, 777-78 (Pa. Super. 2001) (citation omitted). As the Superior Court has explained:

---

[1] Where this Court reviews a trial court's disposition of a motion *in limine*, "our courts apply 'an evidentiary abuse of discretion standard of review.'" *Grimes v. Department of Education*, 216 A.3d 1152, 1159 (Pa. Cmwlth. 2019) (citation omitted). "In order for [this Court] to find that the [trial court] abused its discretion in making the evidentiary ruling, the appellate court must find that the ruling was manifestly unreasonable, partial, prejudiced, biased, based on ill-will, or lacks such support as to constitute a clear error." *Id.*

[2] Although the School District addresses the "timeliness" of the appeal in its appellate brief, contrary to this Court's instruction, Contractor does not address the issue at all in its brief.

[Pa. R.A.P.] 341(b) defines a final Order as "any order that: (1) disposes of all claims or of all parties; or [(3) is entered as a final order pursuant to subsection (c) of this rule.[3]]" The parties mistakenly argue that the Order granting Appellee's Motion in Limine is final pursuant to 341(b)(1) because it had the practical effect of disposing of all of Appellants' claims. A [Pa. R.A.P.] 341(b)(1) Order, however, is not an order that has the "practical effect" of disposing of all claims, but, rather is an order that resolves all claims as to all parties. The court's [] Order did neither. While the court's grant of Appellee's Motion in Limine may have hampered Appellants' presentation of its case, at that point it was the responsibility of the parties to go forward with the case or for Appellee to file a Motion for Summary Judgment the grant of which would have led to an appeal.

The Order in question also does not fit the criteria for a final Order under [Pa. R.A.P.] 341(c). [Pa. R.A.P.] 341(c) provides that a trial court may "enter a final order as to one or more but fewer than all of the claims or parties only upon an express determination that an immediate appeal would facilitate resolution of the entire case." Here, the court did not enter a final order as to any specific claim or party. Even where a final determination has been made as to some of the parties or some of the counts of a multi-count complaint, it is not necessarily appropriate to certify a case. "A determination that an immediate appeal of a non-final order is appropriate should be made only in the most extraordinary circumstances because such action would frustrate the amendments to the Rule. The revisions to the Rule were designed to eliminate the confusion created by the prior case law and to prevent piecemeal appeals which unnecessarily result in delay." Here there is no requisite order dismissing a party or claim. Thus, it was error to certify this matter.

---

[3] Pa. R.A.P. 341(b)(2) was rescinded subsequent to the publication of the above-quoted opinion and, therefore, has been deleted from the quoted portion of that opinion. Because that portion of the Rule was not implicated therein or herein, its rescission does not affect the application of the quoted material or our disposition of the instant appeal.

*Liberty State Bank v. Northeastern Bank of Pennsylvania*, 683 A.2d 889, 889-90 (Pa. Super. 1996) (citation omitted). *See also Robert H. McKinney, Jr., Associates, Inc. v. Albright*, 632 A.2d 937, 939 (Pa. Super. 1993) ("[T]he mere fact that some of the parties have been dismissed from a case, or that some of the counts of a multi-count complaint have been dismissed is insufficient reason to classify an order as final. While the comment to Rule 341 suggests areas where certification may be appropriate, courts are cautioned to refuse to classify orders as final except where the failure to do so would result in an injustice which a later appeal cannot correct."). Moreover, "[a] party, or the parties by agreement, may not vest subject matter jurisdiction in a court which does not have it otherwise." *Mercury Trucking, Inc. v. Pennsylvania Public Utility Commission*, 55 A.3d 1056, 1066 (Pa. 2012) (citation omitted).

Although the parties executed a settlement and stipulated that the trial court's orders "adjudicated" all issues in this action, as the trial court stated in its Pa. R.A.P. 1925(a) Opinion, "This court prohibited [the School District] from presenting a claim or seeking damages at trial for the alleged settlement and cracking in E-Block. [The School District] could have still presented evidence concerning damages in C-Block. [The School District] chose not to do so." Trial Court 3/8/19 Opinion at 7. Thus, the School District could have proceeded on the remaining claims in the complaint, but merely chose not to present any evidence in support of any other claims due to the trial court's rulings on the motions *in limine* on some of the claims raised therein. Moreover, there is nothing in the trial court's orders underlying this appeal, and the parties make no reference to, Count IV of

10

the School District's complaint alleging unjust enrichment[4] or any dispositive order with respect to that Count of the complaint.

---

[4] As the Pennsylvania Superior Court has stated:

> Our Rules of Civil Procedure specifically provide for the alternative pleading of causes of action. Pa. R.C.P. [No.] 1020(c)[.] Moreover, causes of action that are inconsistent are permitted so long as they are pleaded at separate counts. Standard Pennsylvania Practice, §16:59 (2d 2009). Finally, this court has previously held that theories of breach of contract and unjust enrichment *must* be pleaded alternatively in order to allow recovery under the latter theory where an express contract cannot be proven:
>
> > Appellant, alternatively argues that the assessments may be justified under theories of quasi-contract or implied contract. We must first distinguish the various contractual theories. A quasi-contract, also referred to as a contract implied in law imposes a duty, not as a result of any agreement, whether express or implied, but in spite of the absence of an agreement when one party receives an unjust enrichment at the expense of another. A contract implied in fact is an actual contract arising when there is an agreement, but the parties' intentions are inferred from their conduct in light of the circumstances.
> >
> > If a plaintiff fails to prove a cause of action on an express contract, he may not then attempt to prove his case in quasi-contract, unless his complaint originally, or as amended sets forth a cause of action in quasi-contract. In the current case, the complaint averred two causes of action, the first count, in contract, was based on the covenant in the deeds; and the second count, sounding in unjust enrichment, pleaded a quasi-contract. Therefore, appellant could properly proceed on a theory of quasi-contract.

**(Footnote continued on next page…)**

11

In sum, in the absence of a dispositive order on all of the remaining Counts in the School District's complaint, such as one granting summary judgment[5] or nonsuit,[6] or the entry of judgment on those Counts, this appeal from

---

**(continued…)**

*Lugo v. Farmers Pride, Inc.*, 967 A.2d 963, 970 (Pa. Super. 2009) (citation omitted and emphasis in original). In this case, the School District could still proceed on a theory of quasi-contract because the separate Count IV was asserted in the complaint.

In general, a claim of unjust enrichment must allege the following elements: (1) the plaintiff conferred a benefit upon the defendant; (2) the defendant appreciated the benefit; and (3) the defendant accepted and retained the benefit, but it would be inequitable under the circumstances for the defendant to retain the benefit without paying for the value of the benefit. *Styer v. Hugo*, 619 A.2d 347, 350 (Pa. Super. 1993). "In order to recover, there must be *both* (1) an enrichment, and (2) an injustice resulting if recovery for the enrichment is denied." "[A] showing of knowledge or wrongful intent on the part of the benefited party is not necessary in order to show unjust enrichment. Rather, the focus is on the resultant unjust enrichment[,] not on the party's intention." *Torchia by Torchia v. Torchia*, 499 A.2d 581, 582-83 (Pa. Super. 1985) (citations omitted and emphasis in original). "The polestar of the unjust enrichment inquiry is whether the defendant has been unjustly enriched; the intent of the parties is irrelevant." *Limbach v. City of Philadelphia*, 905 A.2d 567, 577 (Pa. Cmwlth. 2006) (emphasis in original). Neither of the parties nor the trial court has addressed any of the foregoing in the orders or opinion disposing of the motions *in limine*, the Settlement Stipulation, or the parties' appellate briefs.

[5] On the merits, the School District first asserts that Contractor's motions *in limine* should be deemed to be untimely motions for summary judgment. However, contrary to the School District's assertion, this Court has explained:

> It is error for a trial court to grant summary judgment or judgment on the pleadings on a motion made on the day of trial where the plaintiff has no notice that he must respond to the legal issue on which the motion is based and does not have a full opportunity to respond to the motion. *Cagnoli v. Bonnell*, [611 A.2d 1194, 1196 (Pa. 1992)]; *School Security Services, Inc. v. Duquesne City School District*, 851 A.2d 1007, 1011 (Pa. Cmwlth. 2004); *Moscatiello Construction Co. v. City of Pittsburgh*, [625 A.2d 155, 156–58 (Pa. Cmwlth. 1993)]. The mere fact that summary judgment is sought on the day of trial does not, however,

**(Footnote continued on next page…)**

**(continued...)**

require that the trial court deny the motion; rather, the issue is whether plaintiff has received a full and fair opportunity to respond to the motion. *Phillips v. Lock*, 86 A.3d 906, 914–15 (Pa. Super. 2014); *see also* Pa. R.C.P. No. 1035.3(e)(1) (providing that "[n]othing in this rule is intended to prohibit a court, at any time prior to trial, from ruling upon a motion for summary judgment without written responses or briefs if no party is prejudiced" and that "[a] party is prejudiced if he or she is not given a full and fair opportunity to supplement the record and to oppose the motion"). Where the plaintiff has sufficient notice of the issues raised by the summary judgment motion and a full opportunity to respond and raise any factual and legal arguments against the motion, the granting of summary judgment on a motion made on the day of trial is not reversible error. *Phillips*, 86 A.3d at 911-15 (affirming grant of motion for summary judgment made by defendant on the morning of trial).

Here, Plaintiff had both ample notice and an unrestricted and unimpaired opportunity to oppose the [Defendant's] motion for summary judgment. Plaintiff received notice over a week before trial of the precise legal issue, sovereign immunity, and the case law and facts on which the summary judgment was based, as these legal and factual arguments were set forth in the [Defendant's] motion *in limine*. The trial court gave Plaintiff extensive opportunities at the motion *in limine* hearing to respond to the summary judgment motion and show that he intended to present evidence at trial that would support a negligence claim not barred by sovereign immunity. Notably, Plaintiff has not set forth in this appeal any evidence or legal arguments that he did not have the opportunity to present to the trial court and argues in his brief only the same facts that the trial court considered. Because Plaintiff was given a full and fair opportunity to oppose the [Defendant's] summary judgment motion, the trial court did not err in ruling on the motion and granting summary judgment on the day of trial. *Phillips*, 86 A.3d at 914–15.

*Robertson v. Port Authority of Allegheny County*, 144 A.3d 980, 983-84 (Pa. Cmwlth. 2016) (citations to record omitted). Likewise, the School District was well aware of the evidence **(Footnote continued on next page...)**

13

the interlocutory orders disposing of the motions *in limine* in this matter is improper. As a result, because the trial court's orders with respect to the instant motions *in limine* did not dispose of all of the claims in this matter and are not final appealable orders, the instant appeal will be quashed.

---

**(continued…)**

sought to be excluded by the motions *in limine* herein and had ample opportunity to garner other evidence to present in support of the claims in the complaint not implicated by the motions.

[6] As the Superior Court has stated:

> A motion for compulsory non-suit allows a defendant to test the sufficiency of a plaintiff's evidence and may be entered only in cases where it is clear that the plaintiff has not established a cause of action; in making this determination, the plaintiff must be given the benefit of all reasonable inferences arising from the evidence. When so viewed, a non-suit is properly entered if the plaintiff has not introduced sufficient evidence to establish the necessary elements to maintain a cause of action; it is the duty of the trial court to make this determination prior to the submission of the case to the jury. When this Court reviews the grant of a non-suit, we must resolve all conflicts in the evidence in favor of the party against whom the non-suit was entered.

> "A compulsory non-suit is proper only where the facts and circumstances compel the conclusion that the defendants are not liable upon the cause of action pleaded by the plaintiff."

*Hong v. Pelagatti*, 765 A.2d 1117, 1121 (Pa. Super. 2000) (citations omitted). Such a motion could have been interposed by Contractor at the conclusion of the School District's case if insufficient evidence was presented to support any of the remaining Counts of the complaint at trial.

Accordingly, the above-captioned appeal is quashed as interlocutory.

_____
MICHAEL H. WOJCIK, Judge

15

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Muhlenberg School District, | : | |
| | : | |
| Appellant | : | |
| | : | |
| v. | : | No. 55 C.D. 2019 |
| | : | |
| Gordon H. Baver, Inc. | : | |

# **O R D E R**

AND NOW, this 4th day of December, 2019, the above-captioned appeal is **QUASHED**.

_____
MICHAEL H. WOJCIK, Judge